Ex parte James Bryant RINE.

No. 6246.

Court of Civil Appeals of Texas, Waco.

July 3, 1980.

Marc McBeath, Neal & McBeath, Vernon, Nina B. Eldridge, Sleeper, Williams, Johnston, Helm & Estes, Waco, for relator.

James R. Jenkins, Brenda Jeffers Damuth, Jenkins & Jenkins, P. C., Waxahachie, for respondent.

HALL, Justice.

Relator James Bryant Rine initiated this proceeding in this Court by application for writ of habeas corpus to gain relief from an order of the 40th Judicial District Court of Ellis County, Texas, committing him to jail until he purged himself of contempt of court by paying delinquent child support payments, attorney's fees, and court costs. We have permitted relator to remain out of jail on bail pending our determination of the case.

When relator and his wife Donna Kay, now Mrs. Donna Kay Morris, were divorced in 1971, relator was ordered to pay $50.00 per month support for their son, Jay Brad Rine, who was born in September, 1966. In September, 1979, Mrs. Morris filed a motion for modification of the child support payment. The motion was heard on March 6, 1980. Mrs. Morris and her attorney were present at the hearing, but relator appeared only by his attorney. The hearing resulted in a written order increasing the child support payments to $200.00 per month, payable on the 10th day of each month, beginning March 10, 1980. The order recites that it was an agreed judgment based upon the parties' "settlement of the cause." It was approved and signed by the attorneys for relator and Mrs. Morris.

On May 22, 1980, Mrs. Morris filed a motion to have relator held in contempt for failing to comply with the order of March, 1980. She alleged the following grounds:

"Movant would show the Court that James Bryant Rine has failed and refused to pay child support as ordered in the Agreed Order heretofore described and signed by this Court [in March, 1980]. Said respondent, James Bryant Rine, has paid a total of $100.00 rather than the total of $600.00 due, and is therefore in arrears in the amount of at least $500.00 as of the date of the filing of this Petition."

In the motion, Mrs. Morris also prayed for reasonable attorney's fees and costs of court.

Notice was issued to relator to appear in court on June 20, 1980 and show cause why he "should not be held in contempt for disobedience of this Court's order [and also be required to pay reasonable attorney's fees and court costs] as alleged in the attached Motion for Contempt."

The hearing on the show cause order was held on June 20, 1980. The undisputed evidence established that relator had made child support payments of only $50.00 per month in the months of March, April, May, and June, 1980. After the hearing, relator was adjudged to be in contempt of the court's child support order of March, 1980, by failing to make support payments of $200.00 per month for the months of March, April, May, and June; and he was committed to jail until he purged himself of contempt by paying delinquent child support payments in the sum of $600.00, $250.00 attorney's fees for Mrs. Morris's attorney, and $32.00 court costs. Relator then filed this proceeding for his release.

In his petition for writ of habeas corpus relator asserts that he is entitled to release because: (1) his commitment was based upon an oral order and not upon a written decree; (2) the judgment of contempt is void because relator was and is unable to pay the ordered child support; and (3) the contempt judgment is void because it is based in part upon relator's failure to pay the June, 1980 child support installment, but that violation was not alleged in the motion for contempt nor included in the show cause order.

■ Relator's contention that his commitment was based upon an oral decree of contempt is overruled. This complaint was assigned by relator in his original petition filed prior to the time the record reached this Court. The record shows that the Court filed a written order of contempt on the day relator was held in contempt. The applicable rule permits detention of the contemnor for "a short and reasonable time while the judgment of contempt and order of commitment are prepared for the judge's signature." *Ex parte Barnett,* (Tex.1980) 600 S.W.2d 252. Relator has not attempted to show that the written order filed on the day he was adjudged to be in contempt was not timely. He tacitly conceded in oral argument that his first complaint was meritless under the record, and it is.

■ This habeas corpus proceeding is a collateral attack on the contempt decree. We have no jurisdiction to weigh the evidence offered at the hearing to determine whether it preponderates against the judgment; and we may treat the contempt order as void only if the evidence conclusively established relator's involuntary inability to perform. *Ex parte Kollenborn,* 154 Tex. 223, 276 S.W.2d 251, 253–254 (1955). In our case, in order to establish his inability to pay the ordered child support, it was relator's burden to show (1) that he lacked the financial resources to make the payments, and (2) that after diligent effort he knows of no source for obtaining the money for payment. *Ex parte Roberts,* 582 S.W.2d 910, 912 (Tex.Civ.App.—Waco 1979, original proceeding); *Ex parte Hennig,* 559 S.W.2d 401, 402 (Tex.Civ.App., original proceeding).

Relator is a farmer and sheep rancher. He has remarried, and he and his wife have an eight-year-old daughter. The essence of his testimony at the contempt hearing was that his farm and ranch operations are wholly subsidized by federal FHA loans; that he owes FHA $205,000.00; that the

maximum amount he can borrow from FHA is $250,000.00; that he owns some livestock, "a lot of equipment," and crops that will be for sale, but if he sold anything the money would go to FHA; that he also owes $75,000.00 on land payments; that he showed a loss on his income tax for 1978 of $35,000.00, a loss on his return for 1979 of $18,000.00, and he expects to break even in 1980, but that the losses included substantial amounts for equipment depreciation; that the loans from FHA are made in September of each year for the coming year; that he borrowed $40,450.00 for 1980; that when he calculated the 1980 loan he included $50.00 per month for child support payments; that he has $6,500.00 remaining to draw on the 1980 loan which must last until November, but that he will have a fuel expense of $4,500.00 and a fertilizer expense of $3,500.00, plus his living expenses; that his wife is employed part-time at a bank and earns $130.00 per month; and that he can pay only $50.00 per month child support, or that he "might can go seventy-five dollars."

As we previously stated, the record also shows that 3½ months prior to the contempt hearing relator agreed, through his attorney, to increase the support payments to $200.00 per month. Although relator was not present at the modification hearing in March, 1980, the evidence shows that he conversed with his attorney by telephone before the agreement was made. Relator testified, "I told my attorney to take care of it. I was busy. That was kind of a lesser of alternatives. I was terribly busy at the time, just didn't feel like I could afford to be away from my sheep that much to come down here and I agreed to that kind of to get the problem off my back until we could ___. I told [my attorney] to take care of it. He called me on the phone and told me what the deal was and I said I don't know anything about it. I said you do what you have got to do until we can get out of this busy season. I told him to take care of it. And he signed the approval."

Relator's agreement to increase the child support payments was made early in the fifth month of his 1980 budget. We believe this agreement, made in a court of law to be acted upon by the judge to settle the disputed issue of relator's ability to pay, even in the light of relator's testimony (which the court was not required to believe) is evidence that when the agreement was made relator was able to pay $200.00 per month child support. There is no evidence of any change in relator's financial condition or responsibilities between March 6th when the agreement was made and June 20th when the contempt hearing was held. Moreover, there is no evidence of how much "draw" remained on the 1980 loan when the agreement was made nor of the nature or amount of relator's expenditures before the agreement was made or after the agreement and before the hearing. In *Ex parte Kollenborn*, 154 Tex. 223, 276 S.W.2d 251, 254 (1955), the Court said:

> "While the relator had the right and duty to pay essential expenses for himself and the two children living with him, he was also under the duty to comply with the support order. If necessary to the discharge of the latter obligation, it was incumbent upon him to reduce to the absolute minimum the expenditures for himself and the children in his home. That he had done this is not conclusively established by his relating how the money was spent each month."

Additionally, referring to the delinquent support payments, relator testified, "I haven't got [the money] and I can't borrow it." Yet, there is no evidence of any effort on his part to borrow the money from any source. If at the time of the hearing relator had only $6,500.00 remaining for living expenses and the operation of his farm and ranch until November and if his operating expenses alone would be at least $8,000.00, as he testified, then it is certain that relator expects a loan or substantial credit from some source until his 1981 FHA loan is effected. The evidence inferentially shows that relator is able to procure funds for living and operating expenses when needed.

■ We hold the evidence does not conclusively establish that relator was involun-

tarily unable to pay the delinquent support payments, or that he is unable to pay the support payments, attorney's fees and costs ordered by the court.

■ We recognize that where a person is adjudged to be guilty of several acts of contempt and the judgment fixes a single penalty applicable to all such acts, and it is subsequently determined that the contemnor could not be held in contempt for one of the acts, but it is not determinable what portion of the penalty is attributable to that act of contempt, then the whole judgment is tainted and is void. *Ex parte Brown*, 574 S.W.2d 618, 621 (Tex.Civ.App.—Waco 1978, original proceeding); *Ex parte Harwell*, 538 S.W.2d 667, 671 (Tex.Civ.App.—Waco 1976, original proceeding); *Ex parte Werner*, 496 S.W.2d 121, 122 (Tex.Civ.App.—San Antonio 1973, original proceeding); *Ex parte Turner*, 478 S.W.2d 256, 258 (Tex.Civ.App.—Houston [1st Dist.] 1972, original proceeding). In those cases the relator was assessed a term in jail, or a fine and a jail term, as punishment for all of the acts of contempt. However, those are not our facts. The parts of the contempt order in our case relevant to relator's "tainted judgment" contention provide as follows:

"[T]he court finds that:

"1. Respondent James Bryant Rine has failed and refused to obey the Order of this Court in that Respondent has failed to make child support payments in the amount of $200.00 per month for the months of March, April, May, and June, 1980, and that Respondent was able to comply with said Order; and that Respondent should be held in contempt of Court;

.   .   .   .   .

"IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED by this Court that James Bryant Rine be, and is hereby adjudged to be, in contempt of this Court and that the punishment therefore be fixed and assessed at confinement in the jail of Ellis County, Texas, until Respondent has fully purged such contempt by the full observance and obedience of the decree of this Court referred to above, by the following acts:

"1. By the payment to Donna Kay Morris, Movant, the sum of $600.00, in back child support.

.   .   .   .   .

"IT IS FURTHER ORDERED that Respondent, James Bryant Rine, be committed to the custody of the Sheriff of Ellis County, Texas, to be confined in the County Jail at Waxahachie, Ellis County, Texas, as herein ordered."

■ Although we agree with relator that the portion of the order holding him in contempt for failure to pay the June payment is void because he was not cited on that ground, we do not agree that because of this the judgment in its entirety is void. The record and the contempt order show precisely the basis of the order and the punishment assessed for the June payment violation. The procedure to be followed under these circumstances is set forth in *Ex parte Williams*, 469 S.W.2d 449, 453 (Tex.Civ.App.—Beaumont 1971, original proceeding). It calls only for deduction of the amount of the June delinquency from the total amount ordered paid by relator to purge himself of contempt.

The portion of the order committing relator to custody until the June delinquency of $200.00 is paid is void and is hereby set aside. This action is without prejudice to the power of the court to entertain further motions seeking to punish relator for the June delinquency and any other delinquencies occurring thereafter. Relator has made payments of $200.00 applicable to the payments due in March, April, and May.

Relator is remanded to the custody of the Sheriff of Ellis County until he has purged himself of contempt by payment of the $400.00 child support arrearages, and by payment of the attorney's fees (about which he raises no individual complaint) and court costs ordered paid by the court.