**Ex parte Michael Lynn LINDER.**

No. 05–89–00893–CV.

Court of Appeals of Texas,
Dallas.

Jan. 8, 1990.

Rothwell B. Pool, Terrell, for relator.

Don G. Smith, Gun Barrel City, for respondent.

## OPINION

BAKER, Justice.

In this original proceeding for writ of habeas corpus, relator Michael Lynn Linder seeks his release from the Kaufman County Jail. The matter arises out of a child support contempt case. Relator contends the trial court's contempt order is void because: (1) although the contempt judgment was signed on July 5, 1989, and he was

jailed on that same date, the writ of commitment did not issue until July 6, 1989; (2) the commitment order was not duly executed by a judge or magistrate; (3) the divorce decree ordering child support is unenforceable because it contains ambiguous language as to the support to be paid by relator; (4) the trial court found relator in contempt for a payment due prior to the date the divorce decree was signed, and therefore the order was impossible to perform; (5) the notice given to relator was insufficient because the ex-wife's contempt motion sought not only contempt but also a money judgment for unpaid child support, and he was entitled to the notice required by section 14.31(d) of the Texas Family Code [1]; and (6) the contempt order does not contain a recitation that relator "knowingly and intelligently" waived his right to counsel. We remand relator to custody.

On January 2, 1981, the District Court of Henderson County, Texas, entered a final divorce decree in *In the Matter of the Marriage of Michael Lynn Linder and Deborah Dianne Linder.* The decree required relator to pay his ex-wife support for his two sons. The order specified child support in the amount of $250 per month, payable in two installments per month of $112.50 each with the first installment being due and payable on the 15th day of December 1980 and a like installment being due and payable on each 3rd and 15th day of the month. The order then provided that thereafter the same amounts of child support were to be paid on the same dates each month until the next child reached eighteen (18) or was otherwise emancipated.

On June 14, 1989, relator's ex-wife filed a motion to hold him in contempt for failure to pay child support totaling $22,612.50 and for judgment in that amount, together with interest, attorney's fees, and costs. The trial court heard the ex-wife's motion on

July 5, 1989. The ex-wife appeared in person and by attorney. Relator appeared pro se. The trial court held relator in contempt for each separate count of nonpayment specified in the ex-wife's motion and ordered relator confined in the Kaufman County Jail for a period of one hundred eighty days for each separate count of contempt with the periods of confinement to run concurrently. This order also required relator to be further confined until he had paid $22,612.50 to his ex-wife and $235 to the District Clerk of Kaufman County as costs of the proceeding. The trial court signed the contempt order on July 5, 1989. Relator was jailed that day. On July 6, 1989, at the direction of the District Judge, the District Clerk of Kaufman County, Texas, signed and issued a writ of commitment.

Relator's first contention is that because he was jailed on July 5, 1989, as a result of the trial court's contempt judgment and because a writ of commitment did not issue until July 6, 1989, his incarceration is void. Relator argues that both a contempt judgment and a commitment order must be signed before his incarceration is valid. Relator relies on *Ex parte Jacobs*, 636 S.W.2d 20 (Tex.App.—Austin 1982, orig. proceeding). *Jacobs* is distinguishable from the facts in this case. In *Jacobs*, the relator was jailed June 11, 1982, pursuant to a signed writ of commitment. The court did not sign a written contempt judgment until June 15, 1982, after the appellate court had released Jacobs on bail. The court in *Jacobs* held that this unsigned contempt judgment was no more than an oral judgment and that an oral judgment cannot form the basis for a valid commitment. *Jacobs*, 636 S.W.2d at 21.

In order to satisfy due process requirements, both a written contempt judgment and a written commitment order

---

**1.** The legislature recently amended the Texas Family Code by amending section 14.31 and creating a number of new sections. *See* Act of July 14, 1989, ch. 25, §§ 17–25, 1989 Tex. Sess.Law Serv. 74, 80–85 (Vernon). Because some of the provisions applicable to this case were contained in former section 14.31 and have since been moved to other sections, for the

sake of convenience, all references in this opinion to those provisions will be to former section 14.31, the text of which is found in the session laws. *See* Child Support Enforcement Improvement Act, ch. 10, § 5, 1986 Tex.Gen.Laws, 2d Spec.Sess. 15, 15–17, *amended by* Act of July 20, 1987, ch. 73, § 5, 1987 Tex.Gen.Laws, 2d Spec. Sess. 225, 227–28.

are necessary to imprison a person for civil constructive contempt of court. *See Ex parte Barnett*, 600 S.W.2d 252, 256 (Tex. 1980). However, the *Barnett* court also reaffirmed that there is no prescribed form for an order of commitment in that "the directive that a person be placed in jail and detained may be contained in an authenticated copy of the court's judgment *or* in a separate order signed by the judge or by the clerk of the court at the judge's direction." *Barnett*, 600 S.W.2d at 256 (emphasis added). The contempt judgment in this case contains the following pertinent recitations:

> IT IS THEREFORE ORDERED that Respondent is committed to the County Jail of Kaufman County, Texas, for a period of one hundred eighty days for each separate count enumerated above.
>
> IT IS FURTHER ORDERED that each period of confinement ... shall run and be satisfied concurrently.
>
> IT IS FURTHER ORDERED that Respondent, ... shall thereafter be further confined ... until Respondent has complied with the following orders.

We hold that these recitations constitute a directive that relator be placed in jail and detained, and as such, the contempt judgment also contains a commitment order. *Barnett*, 600 S.W.2d at 252. The judgment signed by the trial judge prior to relator's imprisonment on July 5, 1989, met the requirements of due process because it was both a written contempt judgment and a written commitment order. Under the facts here, the writ of commitment signed by the district clerk on July 6, 1989, was unnecessary for a valid incarceration of relator.

Relator's second contention is that the commitment order is void because it was not duly executed by a judge or magistrate. Relator relies on *Ex parte Spencer*, 508 S.W.2d 698 (Tex.App.—Texarkana 1974, orig. proceeding). At oral argument relator withdrew this contention and conceded that the better authority was against this argument. *See, e.g., Ex parte Arapis*, 157 Tex. 627, 306 S.W.2d 884 (1957). We agree.

■ Relator's third contention is that the contempt order is void to the extent it sought to enforce the divorce decree because the decree is ambiguous. Relator argues that the divorce decree orders him to pay child support in the amount of $250 per month in two installments of $112.50 each. He notes that two installments of $112.50 would not equal $250 and claims this ambiguity prevents him from fully comprehending his obligation. Relator relies on *Ex parte Slavin*, 412 S.W.2d 43 (Tex.1967). He contends that because of the ambiguity, the entire judgment is void. We disagree. In *Slavin*, the relator was the father of three minor children. The divorce decree ordered him to pay $150 per month for the support of the three minor children until said children reached the age of eighteen years. The Texas Supreme Court stated that the decree was sufficiently certain as long as all three of the children were less than eighteen years. Relator argued that the order became reasonably subject to either one of two interpretations after one of the children reached eighteen. The supreme court agreed and held that the divorce decree must spell out the details of compliance in clear, specific, and unambiguous terms so that such person will readily know exactly what duties or obligations are imposed upon him. *Slavin*, 412 S.W.2d at 44. In *Slavin*, the court concluded that the order lacked clarity, the language was equivocal, and because of the ambiguity it was unenforceable.

Although the specific provisions for payment of $112.50 twice a month arguably render the $250.00 obligation ambiguous and unenforceable under the *Slavin* rationale, this issue is not before us because the contempt order only enforces relator's obligation to pay $112.50 twice a month. In our view, the facts in this case are distinguishable from those in *Slavin* because the decree in this case does spell out in clear, specific, and unambiguous terms that relator is obligated to pay at least $112.50 twice a month. We hold that the divorce decree is not ambiguous as to relator's obligation to pay child support of $112.50 twice a month.

■ Further, in the present case, relator chose to ignore the support order in its entirety and made no payments in any amount. This is another fact that distinguishes our case from the facts in *Slavin*. In *Slavin*, the court was not faced with a relator who had completely ignored his child support obligations. A relator who knows with certainty that he is required to pay either $250 a month or $112.50 twice a month under an order can be punished for contempt for choosing to ignore the order completely. *Ex parte Crawford*, 684 S.W.2d 124, 126 (Tex.App.—Houston [14th Dist.] 1984, orig. proceeding). We reject relator's contention that the contempt judgment is void because the divorce decree is ambiguous.

■ Relator's fourth contention is that the contempt order is void to the extent that the trial court found relator in contempt for failure to pay a child support payment due on December 15, 1980. Relator argues that the divorce decree purportedly imposing this order was not signed until January 2, 1981, and therefore the alleged conduct predates the signing of the order, making the December 15th payment impossible to perform. He argues that because this portion of the contempt order is void, the entire order itself is void. *See Ex parte Lee*, 704 S.W.2d 15, 17 (Tex.1986); *Ex parte Gonzalez*, 414 S.W.2d 656, 657 (Tex.1967). Although relator correctly cites *Lee* and *Gonzalez*, the rationale of those cases applies only where there is one punishment for numerous failures. If any one of the failures is not properly punishable, then the entire judgment is void. *Lee*, 704 S.W.2d at 17. However, where the trial court lists each failure separately and assesses a separate punishment for each failure, only the invalid portion is void. The invalid portion may be severed, and the valid portion retained. *See Ex parte Conoly*, 732 S.W.2d 695, 699 (Tex.App.—Dallas 1987, orig. proceeding); *Ex parte Almendarez*, 621 S.W.2d 664, 667 (Tex.Civ.App.—Fort Worth 1981, orig. proceeding). The contempt judgment in this case lists each failure to pay child support separately and indicates a separate punishment for each. We sever that portion of the contempt judgment confining relator for failing to pay the December 15, 1980 payment, declare it void, and as modified, leave the remainder of the contempt judgment intact. *See Conoly*, 732 S.W.2d at 699.

Relator's fifth contention is that the contempt judgment is void because the notice given to relator of the hearing was insufficient. Relator argues that because his ex-wife's motion was not only for contempt but also for a money judgment for the arrearages, he was entitled to notice provided by the Texas Rules of Civil Procedure applicable to the filing of an original lawsuit, as provided in former section 14.-31(d) of the Texas Family Code. The transcript reflects that the ex-wife's contempt motion included not only a prayer for contempt for relator's failure to make the child support payments but also prayed for judgment on the arrearages. Section 14.31(c) provides that except in a case where the only remedy sought by the movant is for contempt or income withholding, a hearing on such motion shall be held no sooner than 10:00 a.m. on the Monday next after the expiration of twenty days from the date of service. Section 14.31(d) requires service of citation. The ex-wife's motion was filed on June 14, 1989, and the trial court set the hearing for July 5, 1989. The hearing date was on the twenty-first day following the date of the filing of the contempt motion. The transcript does not contain the return of service but does contain a copy of relator's request for court-appointed defense which is dated June 26, 1989, and filed of record with the trial court on June 27, 1989. Relator's complaint is that he was not served in full accordance with the Texas Rules of Civil Procedure.

■ This complaint concerns only a procedural irregularity, not a due-process claim of insufficient notice. The trial court's contempt order recites that relator appeared at the hearing, and this recitation has not been disputed. Relator's appearance at the contempt hearing purged any procedural irregularity in the service of process. *See Ex parte Dabau*, 732 S.W.2d 773, 776 (Tex.App.—Amarillo 1987, orig. proceeding). Additionally, because we do

not have a statement of facts of the hearing, we cannot determine whether relator made any objection to a lack of proper notice or service. Because he has failed to prove an objection was made, his complaint about improper notice and service was waived by his appearance at the hearing. *See Ex parte Boyle,* 545 S.W.2d 25, 27 (Tex.Civ.App.—Houston [1st Dist.] 1977, orig. proceeding). We reject relator's contention that the contempt judgment is void because of insufficient notice.

■ Relator's final contention is that the contempt judgment is void because it does not contain a recitation that he "knowingly and intelligently" waived his right to counsel. Relator relies on this Court's recent opinion in *Ex parte Martinez,* 775 S.W.2d 455 (Tex.App.—Dallas 1989, orig. proceeding). The *Martinez* holding is limited to a situation where a contemnor appears to defend himself pro se and applies for a writ of habeas corpus on the ground that he did not knowingly and intelligently waive his right to counsel. *Martinez,* 775 S.W.2d at 458. In this case, relator has not pleaded lack of waiver of counsel in either his application or amended application for a writ of habeas corpus; consequently, he cannot rely on the *Martinez* holding. However, relator does urge, based on the *Martinez* reasoning, that an affirmative recitation of waiver of counsel is required in *every* contempt order. He argues that the order in this case is void because it does not contain this recitation. In reviewing this contention on the merits, we necessarily must examine our colleagues' reasoning in *Martinez.*

Those portions of the *Martinez* opinion that arguably support relator's position are our colleagues' conclusions: (1) that *Ex parte Gunther,* 758 S.W.2d 226 (Tex.1988) (per curiam), held a contempt order void because its findings of fact did not comply with section 14.32(f) [2]; (2) that the court could consider, in the absence of a state-

ment of facts, the merits of Martinez's contention that he did not knowingly and intentionally waive his right to counsel; (3) that it is the movant's responsibility to reduce the court's finding of waiver to writing and to establish that fact in the record (at least in the absence of a statement of facts); and (4) because section 14.33(a) [3] requires a contempt order to contain certain recitations of fact, there is no reason why the preservation of the right to counsel should not also have to appear affirmatively in the order, especially when an alleged contemnor's liberty is at stake.

First, we consider our colleagues' reliance on *Gunther* as authority for requiring a contempt order to affirmatively show waiver of the right to counsel. They interpret the final sentence in that opinion, "Because the *order of contempt* [was] contrary to the requirement of section 14.-32(f)," *Gunther,* 758 S.W.2d at 227 (emphasis added), to mean that the supreme court held that "the order of contempt in *Gunther* was void because its recitations of findings of fact did not comply with statutorily mandated provisions." *Martinez,* 775 S.W.2d at 457 n. 1. We disagree. We conclude that our colleagues have interpreted this sentence out of context and that, when the entire opinion is closely examined, *Gunther* provides no authority for a holding that an order of contempt is void if it fails to affirmatively reflect a proper waiver of right to counsel.

The *Gunther* court granted the petition for writ of habeas corpus, "to consider whether the trial court was under a duty to inform Gunther of his right to be represented by counsel and his right to appointment of counsel if indigency prevented him from obtaining representation." *Gunther,* 758 S.W.2d at 226. Based on the provisions of section 14.32(f), the court stated "that the trial court was required to inform Gunther of his rights" and that "in the absence of a knowing waiver *or* compliance

---

2. *See* Tex.Fam.Code Ann. § 14.32(f) (Vernon Supp.1990).

3. *See* Tex.Fam.Code Ann. § 14.33(a) (Vernon Supp.1990). The legislature has slightly amended this subsection but, for purposes of this opin-

ion, the changes are not consequential. The former version is found in the session laws. *See* Act of July 20, 1987, ch. 73, § 7, 1987 Tex.Gen.Laws, 2d Spec.Sess. 225, 229.

with the statute, [the trial court] *was without* authority *to hold him in contempt.*" *Gunther,* 758 S.W.2d at 226 (emphasis added). We conclude this last statement refers to the *Gunther* case specifically, because it uses the pronoun "him" obviously referring to Gunther, and because it refers to the trial court in the past tense.

Contrary to our colleagues in *Martinez,* 775 S.W.2d at 457 n. 1, we further conclude that the supreme court relied on the statement of facts of the hearing on the motion to revoke suspension of commitment, which the opinion indicates was before it, as the basis for its factual findings that there was an absence of a knowing waiver or compliance with the statute in the *Gunther* case. Otherwise, the supreme court would have had no basis for concluding that the trial court failed to comply with section 14.32(f) or that there was an absence of a knowing waiver by Gunther. There is simply no indication in *Gunther* that the court considered the form and substance of the contempt order itself in arriving at its ruling, nor did Gunther raise this issue. Consequently, we conclude that the final sentence in *Gunther* is no authority for holding that a contempt order is void when it fails to include a recitation of a knowing and intelligent waiver.

 We next consider the remaining conclusions in *Martinez* regarding which party has the burden to present on review the trial court's finding on the issue of waiver of right to counsel. An original habeas corpus proceeding is a collateral attack on the contempt judgment. *See Ex parte Rohleder,* 424 S.W.2d 891, 892 (Tex. 1967). In a proceeding for a writ of habeas corpus, a relator bears the burden of proof to show he is held under a void judgment. *Ex parte Lowery,* 518 S.W.2d 897, 899 (Tex.Civ.App.—Beaumont 1975, orig. proceeding). A reviewing court has no jurisdiction to weigh the evidence offered at the contempt hearing to determine whether it preponderates against the judgment. Such court may treat the contempt order as void only if the evidence conclusively establishes that fact. *See Ex parte Rine,* 603 S.W.2d 268, 270 (Tex.Civ.App.—Waco 1980, orig. proceeding).

 A petition for writ of habeas corpus, though sworn to, is not proof of the facts stated therein. *Ex parte Crawford,* 506 S.W.2d 920, 921 (Tex.Civ.App.—Tyler 1974, orig. proceeding). Where the granting of the writ of habeas corpus turns on factual evidence such as inability to perform the order or inability to employ an attorney, the reviewing court cannot determine the issue unless the application is accompanied by a statement of facts developed at the contempt hearing. A relator must be prepared to conclusively show his entitlement to a writ. *Crawford,* 506 S.W.2d at 922. In the absence of a statement of facts of the contempt hearing, the reviewing court must presume that there was evidence to support the court's contempt judgment. *See Ex parte Savelle,* 398 S.W.2d 918, 921 (Tex.1966); *Ex parte Nivens,* 592 S.W.2d 1 (Tex.Civ.App.—Houston [1st Dist.] 1979, orig. proceeding). In our view, whether a relator has knowingly and intelligently waived his right to counsel and whether the trial court complied with section 14.32(f) are fact questions. We conclude that if either of these grounds are urged to void a contempt order, this Court cannot review them unless relator's application for writ of habeas corpus is accompanied by a statement of facts of the hearing resulting in his or her incarceration. *Crawford,* 506 S.W.2d at 922. Further, to require the movant for contempt, in the absence of a statement of facts, to see that a court's finding of a contemnor's knowing and intelligent waiver of the right to counsel be reduced to writing and included in the appellate record impermissibly shifts the burden of proof from the relator to the respondent in a habeas corpus proceeding. *Ex parte Arapis,* 157 Tex. 627, 306 S.W.2d 884, 887 (1957).

Our colleagues further note that, as required by section 14.33(a), a contempt judgment must contain certain factual recitations to withstand review on a habeas corpus attack. *See Ex parte Durham,* 708 S.W.2d 536, 537–38 (Tex.App.—Dallas 1986, orig. proceeding). Our colleagues conclude

that if the contempt judgment is required to contain certain factual recitations in order to withstand review, they see no reason why the preservation of right to counsel should not also have to appear affirmatively of record. We note that in section 14.-33(a) the court order is statutorily required to contain the findings set forth in that section. We also note that section 14.31(b) specifically requires certain factual allegations to be contained in the contempt motion itself. However, section 14.32(f), mandating the trial court to admonish an alleged contemnor appearing pro se of his right to counsel or his right to have one appointed if he is indigent, does not require the trial court to include in its contempt order any findings on this requirement. Nor does this section address waiver of these rights to counsel. For the reasons stated, we overrule *Martinez*. We reject relator's contention that the contempt judgment is void because it does not contain a recitation that he "knowingly and intelligently" waived his right to counsel.

Relator's application for writ of habeas corpus is denied, and relator is remanded to the custody of the Sheriff of Kaufman County, Texas, for confinement pursuant to the trial court's contempt judgment and commitment order, except that the portion of the contempt judgment confining relator for failing to pay the December 15, 1980 payment is severed from the trial court's judgment and is declared void.

ENOCH, C.J., and STEWART, THOMAS, KINKEADE, OVARD and WHITTINGTON, JJ., join in this opinion.

Concurring and dissenting opinion by LAGARDE, J., joined by ROWE, J.

HOWELL and McCLUNG, JJ., concur only in the dissenting portion of this opinion.

Dissenting opinion by BURNETT, J., joined by WHITHAM, HOWELL and McCLUNG, JJ.

LAGARDE, Justice, concurring and dissenting.

I concur in the majority opinion as to the first five points of error asserted by relator; however, I dissent as to point six.

The majority conclude that "relator has not pleaded lack of waiver of counsel in either his application or amended application for writ of habeas corpus." I respectfully disagree. Citing *Ex parte Martinez* 775 S.W.2d 455 (Tex.App.—Dallas 1989, orig. proceeding), relator states in his amended application, in pertinent part, "However, the trial court, in its order failed to establish that Relator had a right to counsel, *thereby depriving him of his Constitutional right*" (emphasis added). I conclude that relator is basing his writ, at least in part, on having been denied the right to counsel. Although the record before us does not contain a statement of facts, it does contain a copy of relator's request for court-appointed defense dated June 26, 1989, and filed of record with the trial court on June 27, 1989. The hearing date was July 5, 1989, and the contempt order was signed on that date. It is noted that when the constitution grants protection against criminal proceedings without the assistance of counsel, counsel must be furnished "whether or not the accused requested the appointment of counsel." *See Carnley v. Cochran,* 369 U.S. 506, 82 S.Ct. 884, 889, 8 L.Ed.2d 70 (1962).[1]

In the absence of a recital in the order reflecting the presence of an attorney, a presumption exists that an offer to appoint counsel was not made. Citing *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, the Criminal Court of Appeals of Oklahoma stated, "The presumption, where the record is silent, is that the offer to appoint counsel was not made." *Ex parte Meadows,* 70 Okl.Cr. 304, 106 P.2d

---

1. The majority does not dispute that relator was entitled to federal constitutional protections as well as the statutory protections of Tex.Fam.Code Ann. § 14.32(f) (Vernon 1990); they simply dispute that the contempt order must *facially* reflect the presence of an attorney or the knowing and intelligent waiver thereof.

139, 147 (1940). Moreover, in *Carnley*, the Supreme Court stated:

> Or, it may have meant that it would assume simply that petitioner knew of his right to counsel and was willing to forego it. Of course, the validity of such presumptions is immediately called in question because the accused has no way of protecting against them during his trial except by requesting counsel—a formality upon which we have just said his right may not be made to depend. *Nor is it an answer to say that he may counter such presumptions on collateral attack by showing—if he can—that he had not in fact agreed, or been willing, to be tried without counsel. To cast such a burden on the accused is wholly at war with the standard of proof of waiver of the right to counsel* which we laid down in *Johnson v. Zerbst,* 304 U.S. 458, 464–465, 58 S.Ct. 1019 [1023–1024] 82 L.Ed. 1461.

*Carnley,* 82 S.Ct. at 889. For the foregoing reasons, I join the dissent in holding that the order of contempt is void. Consequently, I would sustain relator's sixth point of error, grant the writ of habeas corpus and discharge relator from custody.

ROWE, J., concurs in this opinion.

HOWELL and McCLUNG, JJ., concur only in the dissent portion of this opinion.

BURNETT, Justice, dissenting.

I disagree with the majority's disposition of two of relator's contentions. An original habeas corpus proceeding is a collateral attack upon the contempt order, and the relator may be relieved of that order's impositions only if the order is void. *Ex parte Dustman,* 538 S.W.2d 409, 410 (Tex. 1976). To my mind, in the present case, the order is void for two reasons. First the underlying divorce decree is ambiguous. Second, the contempt order fails to contain a necessary recitation pertaining to the right to counsel or waiver of right to counsel. Consequently, I would sustain relator's third and sixth contentions.

Relator contends in his third point that the contempt order is void to the extent it sought to enforce the divorce decree because the divorce decree, which orders the relator to pay child support in the amount of $250 per month in two installments of $112.50, is ambiguous. In *Ex parte Slavin,* 412 S.W.2d 43 (Tex.1967), the Texas Supreme Court addressed the issue of whether the terms of a child support order were "definite" and "certain" enough to be enforced by contempt. The Supreme Court stated:

> It is an accepted rule of law that for a person to be held in contempt for disobeying a court decree, the decree must spell out the details of compliance in clear, specific and unambiguous terms so that such person will readily know exactly what duties or obligations are imposed upon him.

*Id.* at 44.

The divorce decree in the case before us is subject to different interpretations concerning the amount relator must pay. Relator must pay either $250 per month or $112.50 twice a month. Because it is subject to more than one interpretation, the divorce decree does not set out relator's obligations in "clear, specific and unambiguous terms" as required by *Slavin.* In *Ex parte Longoria,* 671 S.W.2d 673 (Tex.App. —San Antonio 1984, orig. proceeding), the court, in concluding that the Texas Supreme Court in *Slavin* focused only upon the ambiguity in the order, held an ambiguity was enough to keep the order from being enforced by an adjudication of contempt. *Id.* at 675. Thus, following the Texas Supreme Court's express holding in *Slavin,* I conclude that the ambiguity of the divorce decree renders it unenforceable. I would sustain relator's third point of error.

In his sixth point, relator contends that the contempt order is void because it does not contain a recitation that the trial court informed him of his right to counsel and that the relator knowingly and intelligently waived his right to counsel. Relator bases this contention on *Ex parte Martinez,* 775 S.W.2d 455 (Tex.App.—Dallas 1989, orig. proceeding). This Court in *Martinez,* in turn, relied heavily on *Ex parte Gunther,*

758 S.W.2d 226 (Tex.1988) (per curiam), a decision in which the Texas Supreme Court held that such a recitation was necessary in a contempt order. The majority in the case before us concludes that *Martinez* misinterpreted the supreme court in *Gunther*.

In *Gunther*, the Texas Supreme Court held that section 14.32(f) of the Family Code places a duty on the trial court to inform a relator who is not represented by an attorney of his right to counsel. Section 14.32(f) provides in part:

> If incarceration is possible, the court shall inform a respondent who is not represented by an attorney of his right to be represented and his right to the appointment of an attorney if he is indigent. If the respondent claims indigency and asks for appointment of an attorney, the court shall require him to file an affidavit and may call witnesses and hear any relevant testimony or other evidence to determine the question of indigency. If the court determines that the respondent is indigent, an attorney shall be appointed to represent him.

TEX.FAM.CODE ANN. § 14.32(f) (Vernon Supp.1990).

In holding that the trial court was without authority to hold the relator in contempt, the supreme court in *Gunther* determined that "the *order of contempt* [was] contrary to the requirements of § 14.32(f)...." *Gunther*, 758 S.W.2d at 227 (emphasis added). Thus, the supreme court found error not in the contempt hearing, but in the actual order of contempt. In deciding that the trial court did not follow section 14.32(f), the supreme court specifically held that the *order of contempt* did not comply with the requirements of section 14.32(f). This express language can only mean that the order of contempt must contain a recitation, tracing the language of section 14.32(f), showing that the trial court "inform[ed] [the relator] ... of his right to be represented and his right to the appointment of an attorney if he is indigent."

Any waiver of a right to counsel must be done so "knowingly, intelligently, and voluntarily." *Ex parte McIntyre*, 730 S.W.2d 411, 415 (Tex.App.—San Antonio 1987, orig. proceeding). Thus, the recitation should include as well language that the relator "knowingly, intelligently, and voluntarily" waived his right to counsel.

Also, a comparison can be made with the protections afforded defendants accused in criminal cases in determining whether the order of contempt should require a recitation that the relator was informed of his right to counsel and that the relator knowingly, intelligently, and voluntarily waived the right. It is well established that the Fourteenth Amendment to the United States Constitution incorporates the Sixth Amendment assurance that the accused in a criminal prosecution has the right to assistance of counsel. *Gideon v. Wainwright*, 372 U.S. 335, 342–43, 83 S.Ct. 792, 795–96, 9 L.Ed.2d 799 (1963).

An accused in a criminal prosecution may waive the right to counsel. *Argersinger v. Hamlin*, 407 U.S. 25, 37, 92 S.Ct. 2006, 2012, 32 L.Ed.2d 530 (1972); *Ex parte Ross*, 522 S.W.2d 214, 220 (Tex.Crim.App.), *cert. denied*, 423 U.S. 1018, 96 S.Ct. 454, 46 L.Ed.2d 390 (1975). The waiver, however, must be made knowingly, intelligently, and voluntarily. *Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975); *Barbour v. State*, 551 S.W.2d 371, 372 (Tex.Crim.App.1977). Also, the record must be sufficiently developed to show that the waiver was made knowingly, intelligently, and voluntarily. *Trevino v. State*, 555 S.W.2d 750, 753 (Tex. Crim.App.1977). The Texas Supreme Court in *Ex parte Auten*, 458 S.W.2d 466 (Tex.Crim.App.1970), quoting from *Carnley v. Cochran*, 369 U.S. 506, 516, 82 S.Ct. 884, 890, 8 L.Ed.2d 70 (1962), observed:

> Presuming waiver from a silent record is impermissible. The record must show or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver.

*Id.* at 469.

The Texas Supreme Court, comparing contempt proceedings to criminal proceedings, held in *Ex parte Johnson*, 654 S.W.2d 415 (Tex.1983):

> Because contempt proceedings are triggered by actions which defy the state's

authority and entail possible penal sanctions, Texas courts have consistently held that alleged constructive contemnors are entitled to procedural due process protections before they may be held in contempt.

. . . .

We perceive no meaningful distinction between an individual's rights which are at stake in a constructive criminal contempt hearing ... and those at stake in an ordinary criminal trial where confinement is a possible penal sanction.

*Id.* at 420–21.

Article 42.01, section 1(2), of the Texas Code of Criminal Procedure requires the judgment to reflect:

[t]hat the case was called and the parties appeared, naming the attorney for the State, the defendant, and the attorney for the defendant, or where a defendant is not represented by counsel, that the defendant knowingly, intelligently, and voluntarily waived the right to representation by counsel.

Protection similar to those given an accused in a criminal prosecution must be afforded to the relator. *See Ex parte Goodman*, 742 S.W.2d 536, 540–41 (Tex. App.—Fort Worth 1987, orig. proceeding). Family Code section 14.32(f) does just that by providing the relator with the right to counsel in cases in which incarceration is possible. Because a contempt order incarcerating a relator is so similar to a judgment incarcerating a criminal defendant, the requirements of each should be the same. Thus, the recitation in an order of contempt must show that the trial court informed the relator of his right to counsel and that the relator knowingly, intelligently, and voluntarily waived the right. Because the order in this case fails to contain this recitation, I would sustain relator's sixth point of error.

For the above reasons, I would grant the writ of habeas corpus and discharge relator from custody.