NO. 07-02-0421-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

MARCH 25, 2003

_____

IN THE MATTER OF THE MARRIAGE OF
PAUL N. BROGDON AND BRENDA BROGDON

_____

FROM THE 317TH DISTRICT COURT OF JEFFERSON COUNTY;

NO. C-128,685; HONORABLE LARRY THORNE, JUDGE

_____

Before QUINN and REAVIS, JJ. and BOYD, S.J.[*]

**MEMORANDUM OPINION**[2]

Appellant Paul N. Brogdon presents nine points of error seeking to reverse a judgment that he pay Brenda Chance, formerly Brenda Brogdon, $55,664 plus $750 costs and bearing ten percent interest. By his points of error, Paul asserts the trial court erred as

---

[*]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.

[2]Tex. R. App. P. 47.1.

a matter of law (1) by substantively changing the terms of the 1986 divorce decree and QDRO[3] after it had lost plenary jurisdiction; (2) by substantively changing the express terms of the 1986 divorce decree and QDRO to re-allocate his savings plan benefits contrary to Texas law; (3) in substantively changing the terms of the decree because such change was barred by res judicata; (4) by giving retroactive effect to its clarification order; (5) by assessing interest in its September 4, 2002 order at ten percent requiring a remittitur and reformation of judgment if merited; (6) by reducing an enforceable QDRO to a money judgment without additional service of process: (7) in awarding Brenda a proportionate part of his first distribution from his savings plan because the 1986 decree, QDRO, and May 17, 2002 findings awarded said distribution exclusively to him as his separate property; and (8) in its calculations under ERISA[4] requiring a suggestion of remittitur or a reversal and remand for proper recalculation.  By his ninth point, Paul requests that if this Court remands the matter to the trial court for recalculation, it do so with additional instructions in light of the uncertainty of the actuarial assumptions being employed in the deposition evidence of non-attorneys being embraced by the trial court.  Based upon the rationale expressed herein, we affirm the judgment signed September 4, 2002.

Brenda and Paul were divorced in 1986 and their decree contained a QDRO which, among other provisions, awarded Brenda one-half of the interest in Paul's Chevron Profit

---

[3]Qualified Domestic Relations Order.

[4]Employee Retirement Income Security Act of 1974.

2

Sharing/Savings Plan. Several months after the divorce, Chevron's attorneys informed Brenda's attorney that in order for the decree to qualify as a QDRO, both parties and their attorneys needed to sign an agreement letter. By letter dated December 15, 1986, to Paul's attorney, Brenda's attorney requested Paul's signature and indicated that as soon as he signed, Brenda would also sign and the letter would be returned to Chevron's attorneys. A second letter requesting Paul's signature was again sent on January 28, 1987. The letter, however, remained unsigned. Brenda testified that she believed she was not eligible to receive her share of the savings plan until Paul reached retirement age; thus, she took no further action until she sought new counsel in 1999 in response to a letter from Chevron explaining that the agreement letter had not been signed and that because Paul had made withdrawals from the plan, the funds were insufficient to cover her share.[5] Brenda's new attorney wrote Paul's attorney again requesting that he sign the agreement letter within seven days, threatening legal action if he failed to do so. Paul did not comply and Brenda moved to enforce the judgment. On January 19, 2000, the trial court signed an order compelling Paul to sign. After Brenda's motion was amended a third time, the trial court heard evidence and on September 4, 2002, signed a money judgment awarding her $55,664[6] plus costs and interest at the rate of ten percent annually. A week later the trial court signed a QDRO containing a notice to Chevron's Plan Administrator that the QDRO

---

[5]Brenda's original divorce attorney died approximately three years after the divorce.

[6]This amount reflects a portion of the money due Brenda after receiving $31,385 from the savings plan, with the remainder in the plan belonging to Paul.

was not an agreement between the parties, but was in fact an order of the court that did not require the parties' signatures.

Before we address the issues, we first review portions of record applicable to most, if not all, of Paul's issues. At the hearing on May 17, 2002, the trial court heard Brenda's third amended motion to enforce judgment, at which Brenda and Paul both appeared and testified. At that time, Paul's pleadings included a general denial, a specific denial that the QDRO is an instrument of the Court or that it needs to be modified, and a prayer for general relief and attorney's fees. His pleadings, however, did not raise any affirmative defenses, *i.e.* preemption of state law by ERISA, res judicata, or a plea to the jurisdiction of the court. Before announcing ready, counsel for Brenda outlined her position. Then, counsel for Paul advised the court:

1.  The history stated by Brenda's attorney was substantially correct;

2.  Acknowledge no real fact disputes;

3.  Paul made withdrawals under the erroneous assumption that Chevron had sent him only his portion of the money; and

4.  Paul "obviously got some money that this lady was entitled to. Unquestionably that occurred."

Then, after the court announced:

So , what we've got mistake of fact, we've got equity, unjust enrichment–

4

counsel for Paul replied "[a]bsolutely." These statements of counsel constitute admissions of undisputed facts. *See* Provident Life & Accident Ins. Co. v. Hazlitt, 147 Tex. 426, 216 S.W.2d 805, 807 (1949). Following the pretrial announcements, counsel for both parties announced ready. After the judgment was signed on September 4, 2002, Paul did not file a motion for new trial.

Initially, we note that where, as here, findings of fact are neither filed nor requested, the judgment of the trial court implies all necessary findings to support it. IKB Industries v. Pro-Line Corp., 938 S.W.2d 440, 445 (Tex. 1997). However, when a reporter's record is a part of the record, the legal and factual sufficiency of the implied findings may be challenged on appeal the same as jury findings or a trial court's findings of fact. Roberson v. Robinson, 768 S.W.2d 280, 281 (Tex. 1989). At the conclusion of the trial, the court announced its findings that it had jurisdiction of the matter under sections 9.002, 9.006, and 9.008 of the Texas Family Code Annotated (Vernon 1998), and that 50 percent of Paul's Chevron plans had been awarded to Brenda under the 1986 decree. It also found:

- Paul had legitimately removed some of his money from the plan;
- the remainder of the money in the account that remained over the years belonged to Brenda;
- all stock splits, interests, any increases in value in that account belonged to Brenda;
- any money contributed over the previous 18 months (no evidence as to how much) belonged to Paul;
- any money withdrawn the court was not made aware of would be taken from the amount contributed by Paul over the previous 18 months; and

5

- Brenda's total award of money that accumulated over the years is $87,000.

The court announced that it was not making any award of any separate property money that Paul contributed. By his "matter of law points" Paul does not challenge the legal or factual sufficiency of the evidence to support the judgment or QDRO.

By points of error one and two, Paul asserts the trial court erred in substantively changing the terms of the 1986 decree and QDRO after it had lost plenary jurisdiction. We disagree. Paul argues that because the QDRO was not ambiguous or unenforceable the trial court had no jurisdiction to modify the terms. Relying on Matter of Marriage of Reinauer, 946 S.W.2d 853, 860 (Tex.App.–Amarillo 1997, pet. denied) (on reh'g), Paul contends the court's modification was void and thus, could be raised for the first time on appeal. We disagree that the trial court did not have jurisdiction and that its judgment and 2002 QDRO are void.

Although the court found that it had jurisdiction under sections 9.002, 9.006, and 9.008 of the Family Code, we find that sections 9.101(a) and 9.104 also apply. Section 9.104 provides that if a plan administrator determines that a domestic relations order does not satisfy the requirements of a QDRO, the trial court retains continuing, exclusive jurisdiction over the parties and their property to the extent necessary to render a QDRO. The Chevron manager who reviewed and qualified the QDRO testified by deposition that Chevron did not accept the 1986 QDRO, and testified further that if the agreement letter

6

had been signed and returned to Chevron, the QDRO would have been accepted. Section 9.101(a) provides that a court that renders a final decree of divorce retains continuing, exclusive jurisdiction to render an enforceable QDRO.

Although section 9.007 prohibits a court from altering the division of property approved in a divorce decree, under section 9.006, the trial court had authority to enter a further order to enforce the division of property made in the 1986 decree awarding fifty percent of Paul's savings plan to Brenda. Thus, the trial court's action did not amount to a substantive division of property. Points of error one and two are overruled.

By point of error three, Paul contends the trial court erred in substantively changing the terms of the decree under the doctrine of res judicata. Res judicata is an affirmative defense that must be plead or is waived. Tex. R. Civ. P. 94; In Interest of Striegler, 915 S.W.2d 629, 640 (Tex.App.–Amarillo 1996, writ denied). By his live pleading, Paul did not assert res judicata as a defense; thus, he has failed to preserve this complaint for appellate review. *See generally* Carter v. Charles, 853 S.W.2d 667 (Tex.App.–Houston [14th Dist.] 1993, no writ) (holding that ex-husband's affirmative defense was waived for not being presented to the trial court). Point three is overruled.

Relying on ERISA, Paul alleges by his fourth point of error and other assertions throughout his brief that the trial court erred in giving retroactive effect to its clarification order rather than distributing Brenda's share under the 1986 decree from the date of the 2002 QDRO. In support of his argument, Paul asserts ERISA's choice of law preemption.

7

However, as Brenda points out, that preemption is an affirmative defense that must be raised below or is waived on appeal. *See* Castillo v. Neely's TBA Dealer Supply, Inc., 776 S.W.2d 290, 292-94 (Tex.App.–Houston [1st Dist.] 1989, writ denied) (distinguishing choice of forum preemption which may be raised for the first time on appeal). Paul did not plead ERISA nor did he present any evidence at trial regarding ERISA. Thus, his choice of law preemption contention is not before us.[7] Point of error four is overruled.

By his fifth point of error, Paul complains that the trial court's assessment of interest at the rate of ten percent in its 2002 judgment is erroneous and requests a remittitur and reformation of the judgment. We disagree. Paul argues that under the 1986 decree the parties' relationship was contractual and that section 304.002 of the Texas Finance Code controls, which provides that "[w]hen no specified rate of interest is agreed on by the parties, interest at the rate of six percent is allowed on . . . contracts . . . . In response, Brenda argues that under section 304.004 of the Finance Code, ten percent interest is proper because suit was not filed for breach of contract but for enforcement of a judgment. Although the 1986 decree did not provide for any post-judgment interest, the ten percent rate awarded to Brenda in the 2002 judgment from the date that judgment was signed until paid is not erroneous. *See* Tex. Fin. Code Ann. § 304.003 (Vernon Supp. 2003). Point of error five is overruled.

---

[7]We have not overlooked Paul's reply brief in which he concedes that he is raising ERISA for the first time on appeal. However, his argument focuses on conflict of law preemption which we have determined was waived for purposes of appeal.

By point of error six, Paul asserts the trial court erred in reducing a QDRO to a money judgment without additional service of process. We disagree. We note that Paul failed to object before commencement of trial to a lack of service of process. *See* Tex. R. App. P. 33.1(a); *see also* Ex Parte Linder, 783 S.W.2d 754, 758 (Tex.App.–Dallas 1990, no pet.) (noting that failure to prove that an objection was made waived any complaint of improper service). Citing Ackerly v. Ackerly, 13 S.W.3d 454 (Tex.App.–Corpus Christi 2000, no pet.), Paul argues that a request to reduce the QDRO to a money judgment is an original action requiring service of citation; however, *Ackerly* involved a void default judgment resulting from improper service of process. Here, after Brenda commenced the underlying proceeding, Paul filed his original answer by which he entered a general denial, asserted that Brenda's pleadings failed to state a cause of action, and specifically denied that the original QDRO needed modification. Under Rule 121 of the Texas Rules of Civil Procedure, an answer constitutes an appearance and dispenses with the necessity for the issuance or service of citation. *Ex Parte Linder*, 783 S.W.2d at 758 (holding that a relator's appearance at a contempt hearing purged any irregularity in service of process). Thus, we find Paul's service of process argument without merit. Point of error six is overruled.

By his seventh, eighth, and ninth points, Paul complains of specific dollar amounts awarded to Brenda, erroneous calculations contrary to ERISA, a suggestion of remittitur pursuant to Rule 46.3 of the Texas Rules of Appellate Procedure, a reversal and remand, or reversal and rendition with proper recalculation and alternatively, a reversal and remand

with instructions to the trial court on recalculation of its judgment.[8]   For the reasons expressed herein, we overrule these points.

First, because Paul did not request findings of fact, the judgment of the trial court implies all necessary findings to support it. *IKB Industries*, 938 S.W.2d at 445. Second, deposition testimony from Chevron's team manager for QDRO processing testified without objection to dollar amounts and distributions of the savings plan. Third, after the trial, but before the hearing to enter judgment, Brenda's attorney wrote Paul's attorney enclosing a proposed judgment awarding Brenda $87,050 in accordance with the court's findings. However, at the time of the hearing, Paul's attorney was unavailable even though notified and judgment was entered without objection. Tex. R. App. P. 33.1(a). Finally, Paul's request for recalculation under ERISA is waived as discussed under point of error four. Points seven, eight, and nine are overruled.

---

[8](7) The trial court erred as a matter of law in awarding Brenda a proportionate share of his first distribution from his employee savings plan inasmuch as the 1986 divorce decree and QDRO and May 17, 2002, court findings awarded said distribution exclusively to him as his separate property. (8) Because the trial court erred in its calculations as a matter of preemptive ERISA law, as well as the terms of the 1986 decree of divorce, the court of appeals is requested to file either a suggestion of remittitur, and reverse and remand if it is not timely filed, or, alternatively, reverse and render via proper recalculation of the amounts in the September 4, 2002 court order. (9) Alternatively, if the court of appeals remands to the trial court for recalculation of its judgment, it should supply additional instructions, in light of the uncertainty of the actuarial assumptions being employed in the deposition evidence of non-attorneys being embraced by the trial court.

By motion and amended motion pursuant to Rule 44.4 of the Texas Rules of Appellate Procedure, Brenda suggests that a correction ("legal housekeeping") in the 2002 QDRO is appropriate because as drawn, it might entitle her to more of the retirement distribution than under the 1986 QDRO. Paul does not oppose Brenda's motion. Because both parties agree that the retirement portion of the original QDRO was never at issue, we grant the amended motion and remand the QDRO signed September 11, 2002, to the trial court with instructions to correct the retirement portion beginning at paragraph five to reflect verbatim the language of the original QDRO regarding distribution of Brenda's fifty percent of Paul's retirement plan, but not otherwise.

Accordingly, the judgment signed September 4, 2002 awarding Brenda Brogdon (Chance) $55,664 is affirmed.

Don H. Reavis
Justice