**Ex parte William Randall JOHNSON, Relator.**

**No. 6093.**

Court of Civil Appeals of Texas, Waco.

May 31, 1979.

Rehearing Denied June 28, 1979.

David W. Anderson, Hand & Anderson, Marlin, for relator.

Thomas P. Moore, Jr., Waco, for respondent.

HALL, Justice.

This is an original proceeding in this court by relator William Randall Johnson for writ of habeas corpus to gain relief from an order of the 74th Judicial District Court of McLennan County committing him to jail for 30 days for contempt of court for failing to comply with part of the property division order of that court in the judgment divorcing relator and his former wife Elizabeth Johnson. We have permitted relator to remain out of jail on bail pending our determination of his application.

Relator and Mrs. Johnson were divorced by judgment of the 74th Judicial District Court in July, 1976. At that time relator was receiving service-connected veterans' disability compensation benefits of $722.00 per month from the Veterans' Administration under the provisions of 38 U.S.C. §§ 101 et seq., and civil service retirement benefits of $300.00 per month. As a part of the court's settlement of the parties' properties, relator was ordered in the divorce judgment to deposit one-half of each of those benefits monthly as they were received by him into the registry of the court for Mrs. Johnson. The judgment of divorce was not appealed and is final. Relator complied with the order through November, 1978. However, relator did not pay Mrs. Johnson any part of the veterans' compensation benefits he received in December, 1978. He told her then he would no longer pay any of those benefits to her, and that "he would stop his check to keep me from getting it." The questioned contempt decree was founded on that violation.

Relator had been an active member of the United States Navy for four years when he and Mrs. Johnson married in April, 1951. He was given a medical discharge in July, 1959. Relator was suffering lateral sclerosis and arthritis of the spine which were service-connected and 100% disabling at the time of his discharge, and he was entitled to and began receiving disability retirement pay. (See, 10 U.S.C. § 1201). In March, 1970, relator executed a waiver of his retired pay in order to receive the disability compensation benefits in question from the Veterans' Administration. When relator effected that waiver he was receiving $142.28 per month gross retirement pay from the Navy. The waiver and exchange of the benefits is provided for in 38 U.S.C. § 3105, but under the terms of § 3104(a), relator may not receive both. The evidence establishes without dispute that relator chose to receive Veterans' Administration compensation benefits in lieu of Navy disability retirement benefits; that the compensation he presently receives is not based upon the length of his military service, but is based solely upon his disability; that

relator is not presently entitled to longevity retirement; that his disability was service-connected; that he is presently 100% disabled; that his disability rating is subject to periodic review; and that to the extent he may improve in the future his disability benefits could be reduced. The Veterans' Administration officer who handles relator's claim testified, "If [relator's] condition improves, his disability compensation from the VA could be changed in accordance with his condition. And it would also be true if his condition improves enough, then he would be completely cut off from that compensation."

Veterans' basic entitlement to disability compensation from the Veterans' Administration for service-connected disabilities resulting from personal injury or disease in either wartime or peacetime is set forth in 38 U.S.C. § 310 and § 331. As used in those statutes the term "compensation" is defined in § 101(13) to mean "a monthly payment made by the Administrator to a veteran because of service-connected disability." The basic rates of compensation depend upon the percentage of disability and whether it was incurred during wartime or peacetime. §§ 314, 334.

Provision is also made in connection with both wartime and peacetime disability compensation for additional compensation to the veteran for a dependent wife, children, and parents. §§ 315, 335. However, under the terms of § 3012(b)(2), the compensation shall be reduced "by reason of . . . divorce, or death of a dependent of a payee." Our record shows that relator's compensation was changed after he divorced Mrs. Johnson for the reason, "Dependent Removed."

Excepting certain questions related to veterans' insurance and to home, farm and business loans, it is provided in § 211 that, "[T]he decisions of the Administrator on any question of law or fact under any law administered by the Veterans' Administration providing benefits for veterans and their dependents or survivors shall be final and conclusive and no other official or any court of the United States shall have power

or jurisdiction to review any such decision by an action in the nature of mandamus or otherwise."

Among other grounds for relief, relator contends the part of the divorce judgment ordering him to pay part of the disability benefits to his former wife is void for two reasons: first, he asserts that under the terms of the statutes cited above the benefits in question are gratuity to him from the federal government which may be withdrawn by Congress at any time and therefore he did not have a "property" interest in the benefits subject to division upon the granting of the divorce; and second, he asserts that, in any event, under the Supremacy Clause of the Federal Constitution and the nonassignability provisions contained in 38 U.S.C. § 3101(a) application of our State marital property laws to the benefits had been expressly preempted by Congress.

#### relator's property interest

V.T.C.A., Family Code § 5.01 provides the separate property of a spouse consists of: ". . . (2) the property acquired by the spouse during marriage by gift, devise, or descent; and (3) the recovery for personal injuries sustained by the spouse during marriage, except any recovery for loss of earning capacity during marriage."

Our record shows without dispute that relator's eligibility for the benefits in question ripened while he was in military service during his marriage to Mrs. Johnson, and that he has in fact chosen to accept the benefits in lieu of disability retirement pay which our Supreme Court has held is community property of the spouses divisible upon divorce. *Busby v. Busby*, (Tex.1970) 457 S.W.2d 551, 554.

■ Whether the benefits be classed as a gift to relator from the federal government, or whether they be classed as "a payment personal to him from the government for service-connected injury or disease sustained in military service and is not the result of an earned property right" as the court did in *Ramsey v. Ramsey*, 474 S.W.2d 939, 941 (Tex.Civ.App.—Eastland 1972, writ dism.), they were relator's separate proper-

ty at the time of divorce within the marital property law of this State as set forth in § 5.01 of the Family Code, supra. They were income to his personal estate at the time of divorce, and he continues receiving them.

■ It is the duty of a court rendering a judgment of divorce to "order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage." V.T.C.A., Family Code § 3.63. Under the authority of that statute, the court may award all or any part of either spouse's separate personal property to the other when necessary to effect an equitable division of their properties. *Hedtke v. Hedtke*, 112 Tex. 404, 248 S.W. 21, 22 (1923); *Muns v. Muns*, 567 S.W.2d 563, 564 (Tex.Civ.App.—Dallas 1978, no writ). Presumably, when relator and Mrs. Johnson were divorced, the court determined that an equitable division of their properties required relator to pay one-half of his disability benefits to her. As we have said, the divorce decree is final, and relator may not now attack that determination in this collateral proceeding. *Bray v. Bray*, 576 S.W.2d 664, 665 (Tex.Civ.App.—Beaumont 1978, no writ).

#### federal preemption

U.S.Const., Art. VI, provides in part:

"This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

In pertinent part, 38 U.S.C. § 3101(a) contains a nonassignability provision relating to the benefits in question which reads as follows:

"Payments of benefits due or to become due under any law administered by the Veterans' Administration shall not be

assignable except to the extent specifically authorized by law, and such payments made to, or on account of, a beneficiary shall be exempt from taxation, shall be exempt from the claim of creditors, and shall not be liable to attachment, levy or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary."

■ We view that statute as designed by Congress to place the benefits beyond the reach and anticipation of creditors by assignment and from seizure under process issued for the collection of debts. Substantially similar congressional and legislative enactments may be found in 10 U.S.C. § 1440 (military annuities); Vernon's Ann. Civ.St., Art. 6228a, § 9 (state and county pensions); Vernon's Ann.Civ.St., Art. 6243e.2, § 12 (firemen's relief and retirement fund); Vernon's Ann.Civ.St., Art. 6243j, § 20 (policemen's pensions). The statute was not intended to remove the benefits from the application of the marital property laws of the several States, including the community property laws of our State.

Relator argues our construction of § 3101(a) is no longer tenable in the light of the ruling of the United States Supreme Court in the recent case of *Hisquierdo v. Hisquierdo*, —— U.S. ——, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979).

In *Hisquierdo*, the Court held that retirement benefits under the Railroad Retirement Act of 1974, 45 U.S.C. §§ 231 *et seq.*, are not subject to division by a State court as "property" upon divorce. It held that under the Supremacy Clause of the Federal Constitution, the community property law of the State of California was preempted by the express terms of the Act, especially by the anti-attachment and nonassignability provisions set forth in § 231m which reads as follows:

"Notwithstanding any other law of the United States, or of any State or territory, or the District of Columbia, no annuity or supplemental annuity shall be assignable or be subject to any tax or to garnishment, attachment, or other legal process under any circumstances whatsoever, nor shall the payment thereof be anticipated."

The language in § 231m is a much stronger expression of Congressional intent for preemption than that contained in 3101(a). It expressly calls for adherence to its terms "notwithstanding any other law of any State" or any other federal law; whereas § 3101(a) permits assignment "to the extent specifically authorized by law."

The *Hisquierdo* decision was based upon several provisions in the Railroad Retirement Act, but the Court placed great emphasis on the terms of § 231m. The Court noticed its prior ruling that, "State family and family-property law must do 'major damage' to 'clear and substantial' federal interests before the Supremacy Clause will demand that state law be overridden" and stated that "[t]he federal nature of the benefits does not by itself proscribe the entire field of state control." But it said that § 231m "plays a most important role in the statutory scheme" relating to the railroad retirement benefits, and "preempts all state law that stands in its way." It said, "Congress has made a choice, and § 231m protects it. It is for Congress to decide how these finite funds are to be allocated. The statutory balance is delicate. Congress has fixed an amount thought appropriate to support an employee's old age and to encourage the employee to retire. Any automatic diminution of that amount frustrates the congressional objective. By reducing benefits received, it discourages the divorced employee from retiring."

We do not believe the decision in *Hisquierdo* is controlling in our case.

Relator's remaining contentions are also without merit and are overruled.

Relief is denied. Relator is remanded to the custody of the Sheriff of McLennan County.