**In the Matter of the MARRIAGE OF James Richard REINAUER and Margaret Ann Reinauer.**

No. 07–96–0013–CV.

Court of Appeals of Texas, Amarillo.

March 13, 1997.

Order Granting Rehearing in Part May 22, 1997.

Second Rehearing Overruled July 8, 1997.

Thomas J. Purdom, Lubbock, Rex W. Easterwood, Hereford, for appellant.

Underwood Wilson Berry Stein & Johnson, P.C., James E. Wester, Ginger P. Nelson, Amarillo, for appellee.

Underwood, Wilson, Berry, Stein & Johnson, James W. Wester, Ginger P. Nelson, Amarillo, Bass, Higdon & Hardy, Inc., James N. Higdon, San Antonio, for appellant on motion for rehearing.

Law Offices of Thomas J. Purdom, Thomas J. Purdom, Lubbock, Law Offices of Rex Easterwood, Rex Easterwood, Hereford, for appellee on motion for rehearing.

Before BOYD, C.J., and DODSON and QUINN, JJ.

QUINN, Justice.

James Reinauer (Reinauer) appealed from a "Final Judgment" enforcing a prior divorce decree and awarding Margaret Ann Reinauer Cowan (Cowan) a portion of his military retirement benefits. Through four points of error he asked whether the trial court erred in 1) actually dividing disability as opposed to retirement benefits, 2) failing to grant his plea to jurisdiction, 3) failing to deny recovery since same was barred by the statute of limitations, and 4) modifying a final divorce decree. We affirm in part and reverse and remand in part.

### Background

Reinauer and Cowan were divorced on August 20, 1979. In the decree terminating their marriage, Cowan was awarded a portion of Reinauer's military retirement benefits.[1] The applicable provision read:

It is the finding of the Court that ... Reinauer ... is an officer on active service in the United States Navy, and that as such, he accrues potential *retirement income benefits*, which may, or may not ripen into actual *retirement income*, since the completion of twenty ... years of service is a prerequisite to such actual vesting of retirement pay benefits. The Court finds and decrees that the accrual and entitle-ments under such *military retirement plan* which relate to Petitioner's service during the marriage of the parties is Community Property, and that the parties are each entitled to one-half of such benefits, *if and when paid*, as are attributable to such service-years during marriage, the court finds that Petitioner completed eleven ... service years during marriage.

If, therefore, the said [Reinauer] shall continue in the military service until he accrues actual *retirement pay benefits*, it is Decreed that such *retirement pay* shall be paid to the parties hereto as follows:

(1) One-half of the 'Community Interest' ... shall be paid to ... [Cowan] and the balance of such pay shall be paid to ... [Reinauer].

(2) The 'Community Interest' is, and shall be, that fraction of the *retirement pay* in which the denominator of the fraction is [Reinauer's] total service years at retirement and the numerator is eleven. . . .

'It is not intended hereby to require Petitioner to remain on active military duty, and if he shall fail to complete 20 service years, then this provision of the Judgment shall impose no duty on him with respect to military *retirement pay*, but if he completes 20 or more service years, and receives actual *retirement pay*, then he shall be, and is hereby Ordered to receive, for the benefit of [Cowan] and in order to effectuate the terms of this Judgment, [Cowan's] community interest in such *retirement benefits*. [Reinauer] is further Ordered to deliver to [Cowan] within ten days of his receipt of such actual *retirement pay*, her community interest in such *retirement payments*.'

(Emphasis added).

Some years after the divorce, Reinauer began to experience physical ailments and underwent medical examination. As a result of same, he was found to be 20% disabled, and the Navy placed him on temporary dis-

---

1. Since no one argued otherwise, we presume that the judgment became final and nonap-pealable within thirty days after its issuance in August of 1979.

ability retirement.[2] Thereafter, he received a letter from the "Retired Pay Department" of the Navy welcoming him "to the retired roll" and informing him that his "disability retired pay account" had been established. Additionally, several options were extended with regard to the pay he could receive during his temporary retirement. While one option included a percentage of his disability as an element in the overall formula, he selected a method founded solely upon the number of years he served in the military.

Apparently, Reinauer's condition deteriorated. In April of 1992, he was assigned a 40% disability. Moreover, the Secretary of the Navy "approved the recommendation of the Physical Evaluation Board that [he] be permanently retired because of physical disability." He again was given several options concerning the manner in which his post-service pay could be calculated. And, he selected "the nondisability" formula which, like before, calculated his future benefits solely upon the number of years he served.

Incidentally, the nondisability formula was offered him because he had accrued a sufficient number of years in the military to voluntarily retire.[3] But before he could execute the requisite papers to voluntarily end his relationship with the Navy, the latter placed him on permanent disability retirement under 10 U.S.C. § 1201 *et. seq.*[4] Indeed, had he had a choice, he would have opted to serve for a full 28 years, as allowed by federal law.

As a result of being characterized as disabled, Reinauer was directed to apply for disability benefits from the Department of Veteran Affairs (VA). He did so. But to receive same, the law required him to waive a portion of his naval benefits. He did that as well. Consequently, his gross disability retirement compensation consisted of monies

from the Navy computed under 10 U.S.C. §§ 1201 and 1401 and from the VA as per 38 U.S.C. §§ 3101 *et. seq.*

Upon discovering that her ex-husband had "retired," Cowan moved the trial court to award her a percentage of Reinauer's benefits. The primary dispute below lay in whether the Navy and VA payments came within the scope of "retirement pay" as contemplated in the 1979 divorce decree. That is, the trial court was asked to determine whether his disability retirement compensation was "retirement pay" under the decree, and therefore, payable in part to Cowan. It held that it was.

### Point of Error One

■ In his first point of error, Reinauer asserted that the trial court erred in granting judgment which apportioned both his disability retired pay and Veterans Affairs disability compensation. We overrule the point as to the monies from the Navy but sustain it as to the VA funds.

■ First, to the extent Reinauer suggested that *McCarty v. McCarty*, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981) nullified the provision of the divorce decree apportioning military retirement, he was mistaken. Though the United States Supreme Court held in *McCarty* that military retirement was not subject to division as a community asset, the decision lacked retroactive application. *Segrest v. Segrest*, 649 S.W.2d 610, 613 (Tex.1983), *cert. denied*, 464 U.S. 894, 104 S.Ct. 242, 78 L.Ed.2d 232 (1983). That is, it had no affect upon judgments which were final and non-appealable before *McCarty* issued. *Id.* So, that part of the divorce decree at bar which divided Reinauer's retirement benefits was, and is, en-

---

2. By that date, Reinauer had served slightly over twenty years in the service.

3. According to 10 U.S.C. § 6323, a naval officer was entitled to voluntarily retire, with the consent of the United States President, after 20 years of service.

4. Section 1201 of the United States Code states that:

    Upon a determination by the Secretary concerned that a member of a regular component

of the armed forces entitled to basic pay ... is unfit to perform the duties of his office, grade, rank, or rating because of physical disability incurred while entitled to basic pay, the Secretary may retire the member, with retired pay computed under section 1401 of this title ....

Furthermore, it was recognized long ago that retirement under § 1201 was rather involuntary. *Busby v. Busby*, 457 S.W.2d 551, 554 (Tex.1970).

forceable since the decree became final and nonappealable several years before *McCarty*.

■ Second, though the United States Congress attempted to overrule *McCarty* via the Uniformed Services Former Spouses' Protection Act (USFSPA) [5], *Richard v. Richard*, 659 S.W.2d 746, 748 (Tex.App.—Tyler 1983, no writ), that statute also lacked retroactive application. According to the Texas Supreme Court, it too could not be invoked to collaterally attack a judgment which had become final and non-appealable before its passage. *Berry v. Berry*, 786 S.W.2d 672, 673 (Tex.1990); *Jones v. Jones*, 900 S.W.2d 786, 787–88 (Tex.App.—San Antonio 1995, writ denied). And, again, because the decree at bar became final years before the USFSPA went into effect, that statute was, and is, not controlling.[6] Third, before *McCarty*, Texas recognized prospective military retirement benefits as a community asset subject to division. *Cearley v. Cearley*, 544 S.W.2d 661, 665–66 (Tex.1976); *Busby v. Busby*, 457 S.W.2d 551, 553–54 (Tex.1970) (dealing with disability retirement payments). It did so because they were tantamount to contingent property rights. *Id.* Thus, the trial court acted lawfully when, in 1979, it awarded Cowan a percentage of Reinauer's eventual military retirement.

■ Fourth, whether the government payments received by Reinauer were properly divided depended upon the construction given the phrase "retirement pay" in the 1979 decree. Thus, we must decide what was meant by the court in using the aforementioned phrase. This, in turn, obligates us to interpret the term in reference to the entire judgment and with the purpose of "giving effect to all the court has written." *Point Lookout West, Inc. v. Whorton*, 742 S.W.2d 277, 278 (Tex.1987). So too must we declare its effect in accordance with the literal language used. *Barnard v. Barnard*, 863 S.W.2d 770, 772 (Tex.App.—Fort Worth

1993, no writ). Lastly, and most importantly, the construction derived must comport with the law; that is, the term cannot be read in a manner achieving an illegal result. *See id.* at 774 (holding that a construction which correctly applies the law must be adopted).

■ In applying the foregoing rules to the situation at hand, we are not without guidance. For instance, retirement pay, as per *Busby* and *Cearley*, connotes an earned property right that accrued by reason of years of service or deferred compensation earned during each month of service. *Acosta v. Acosta*, 836 S.W.2d 652, 654 (Tex.App.—El Paso 1992, writ denied); *Whorrall v. Whorrall*, 691 S.W.2d 32, 37 (Tex.App.—Austin 1985, writ dism'd); *see Cearley v. Cearley*, 544 S.W.2d at 665 (holding the payments to be community property and divisible because they were a form of deferred compensation earned during each month of military service); *Busby v. Busby*, 457 S.W.2d at 552 (comparing the military retirement pay to an earned property right accruing by reason of years in military service). In other words, the payment must, at the very least, be a form of compensation accruing to the individual due to his years of service with the employer. Discretionary payments made for purposes other than as compensation earned during an employee's tenure do not satisfy these criteria and, thus, are not retirement pay or benefits. *See Whorrall v. Whorrall*, 691 S.W.2d at 37–38 (holding that a payment given to induce one's early retirement was not part of his "retirement" because it was discretionary, unique, and not earned during the employee's tenure). Nor do mere gratuities or gifts from one's employer satisfy the requisite criteria. *Ex parte Johnson*, 591 S.W.2d 453, 454–55 (Tex.1979); *see Busby v. Busby*, 457 S.W.2d at 552 (acknowledging that military retirement was divisible upon

---

5. 10 U.S.C. § 1408.

6. This conclusion also vitiates Reinauer's argument that the USFSPA prevented the trial court from apportioning disability retirement. Though Congress stated that the "disposable retired pay" subject to division excluded sums "equal to the amount of retired pay of the member under ... [10 U.S.C. §§ 1201 *et. seq.*] using the percentage

of the member's disability on the date when the member was retired," the declaration is of no import. Again, the act had no retroactive effect, *Berry v. Berry*, 786 S.W.2d 672, 673 (Tex.1990) and *Jones v. Jones*, 900 S.W.2d 786, 787–88 (Tex.App.—San Antonio 1995, writ denied) upon final judgments.

divorce since, among other things, it was not a mere gift from the government).

Here, the Navy compelled Reinauer to leave active duty. Though his severance was involuntary, it was nonetheless done pursuant to statute expressly authorizing the Secretary of the Navy to "retire" officers "with retired pay." 10 U.S.C. § 1201. In comparison, the 1979 decree sought to divide his "retirement" pay or benefits. One can easily see that the literal language of the decree comported with the nature of the action undertaken by the Secretary; that is, the navy "retired" him while the court divided his "retirement pay."

Additionally, the compensation given Reinauer under § 1201 had been held to be an *earned property right accrued by reason of years of service* rather than a gift or gratuity. *Busby v. Busby,* 457 S.W.2d at 552–54. That it may be labeled "disability retirement pay," or the like, mattered not given its substantive nature. Nor was the fact that it arose due to his forced retirement of consequence. *See id.* at 554 (holding that benefits paid due to Busby's involuntary retirement under § 1201 were subject to the same rule applicable to payments made for voluntarily retiring). Thus, having satisfied the requisite indicia, the monies paid Reinauer by the Navy were, and are, "retirement pay" within the scope of the 1979 decree. Yet, the same cannot be said of his payments from the VA. They were given him as a means of facilitating his readjustment to civilian life. 38 U.S.C. § 3001. More importantly, the courts of this State characterized them as a gratuity based upon a service-connected disability rather than an earned property right due to years of service. *Ex parte Johnson,* 591 S.W.2d at 455; *Ramsey v. Ramsey,* 474 S.W.2d 939, 940–41 (Tex.Civ.App.—Eastland 1971, writ dism'd). And, because the payment of same lay within the discretion of Congress (which discretion may be extended or revoked at will), *id.; Milliken v. Gleason,* 332 F.2d 122, 123 (1st Cir.1964) *cert. denied,* 379 U.S. 1002, 85 S.Ct. 723, 13 L.Ed.2d 703 (1965), they were, and are, not even consid-

ered property. *Ex parte Burson,* 615 S.W.2d 192, 194 (Tex.1981). So, they fail to satisfy the indicia of retirement pay and cannot be said to have been encompassed by the 1979 decree.

■ Cowan would disagree with our determination *vis-a-vis* the VA funds. For instance, she first alleged that Reinauer waived his complaint regarding division of the VA benefits. Supposedly, "[n]either the transcript nor the statement of facts contain[ed] any evidence of a motion, objection, or request at trial regarding" same. Yet, our perusal of the record disclosed that from the inception of the hearing to enforce the 1979 Decree, he consistently argued that the trial court could not apportion his "disability." So too did he present evidence showing that a portion of the disability in dispute consisted of his VA benefits. Having been presented to and argued before the trial court, the question was preserved for appeal.

■ Next, Cowan suggested that because the Texas Supreme Court's decision in *Johnson* issued several months after the 1979 decree became final, its teachings had no effect upon our interpretation of that decree. She was again mistaken. The purposes underlying the VA disability payments were simply acknowledged by the Supreme Court in *Johnson* but actually established years before by the United States Congress. Moreover, having the purposes they did, they fell outside the scope of retirement compensation as declared years earlier in *Busby* and *Cearley.* Finally, the rule reiterated in *Johnson* was first pronounced in *Ramsey v. Ramsey,* 474 S.W.2d 939 (Tex.Civ.App.— Eastland 1971, writ dism'd), five years before the Reinauers were divorced.[7]

Nor can we accept her notion that she was entitled to both a percentage of the retirement benefits he actually received and those waived to secure VA disability. It may well be that the 1979 Decree did "not exclude [from the retirement benefits awarded her] any benefits waived ... to receive VA disability benefits." But, the trial court in 1979 certainly did not award her an interest in

---

7. Nor can Cowan find much succor in the intermediate appellate court decision of *Ex parte Johnson,* 583 S.W.2d 660 (Tex.Civ.App.—Waco 1979, no writ) if for no other reason than the fact that the Supreme Court implicitly overruled it in *Ex parte Johnson,* 591 S.W.2d 453 (Tex.1979).

pure disability payments for it could not without violating the then applicable law. Rather, her interest consisted of nothing more than a proportionate share of the retirement benefits paid to him.[8] And, federal statute now codified at 38 U.S.C. § 5305 granted him the privilege to waive those benefits in order to receive true disability. *Ex parte Burson,* 615 S.W.2d 192, 196 (Tex. 1981). So, by invoking that privilege, his obligation to Cowan effectively decreased in direct proportion to the amount of retirement benefits he waived. *Id.*

### Point of Error Two

In point of error two, appellant argued that the trial court erred in overruling his special appearance. We disagree and overrule the point.

■ Though neither party lived in Texas when Cowan first moved to enforce the decree in October of 1993, the record nevertheless revealed continuous and systematic contacts between Reinauer and the State. For instance, and aside from the fact that a district court in Deaf Smith County, Texas granted the divorce, he had lived in Deaf Smith County or Austin, Texas until entering the Navy in 1967. Thereafter, Deaf Smith County was designated as his "home of record" throughout his stay in the military and up to May of 1992. And though he moved to Albuquerque, New Mexico sometime in the early 1990's, he swore to the county clerk of Deaf Smith in September of 1992 that Deaf Smith was his residence, voted in this State's elections as late as November of 1992, represented to the Internal Revenue Service (under oath) in June of 1993 that Deaf Smith County was his home, owned (at the time Cowan sought enforcement) real estate in Deaf Smith County and rental property in Corpus Christi, Texas, maintained an agent in Texas to assist in the rental of his Corpus Christi property, maintained a partnership interest in (and thereby had a right under Texas law to control and operate) a general farming partnership that conducted business in Deaf Smith County, maintained the registration of at least one motor vehicle in Deaf Smith, acted as the co-executor of his mother's will which was undergoing probate in Deaf Smith, appeared in the Deaf Smith County Courthouse to recant his Texas voter registration in March of 1994, and traveled frequently to Deaf Smith County. These contacts amply supported the conclusion that Reinauer voluntarily submitted himself to the benefits extended and restrictions imposed by Texas law.

Nor can we forget that statute vested the 222nd Judicial District Court with continuing authority "to enforce the property division." TEX. FAM.CODE ANN. § 3.70(c) (Vernon 1993).[9] That authority, according to one court, encompassed both subject-matter and personal jurisdiction over the property divided in and persons bound by the divorce decree. *Dechon v. Dechon,* 909 S.W.2d 950, 955 (Tex. App.—El Paso 1995, no writ). And, if for nothing else, § 3.70(c) evinced this State's continuing and substantial interest in resolving disputes like that at bar.

In sum, the record contained evidence sufficiently illustrating Reinauer's continuous and systematic contacts with this State. So too did it illustrate that the exercise of jurisdiction over his person would not offend traditional notions of reasonableness. Consequently, the trial court did not abuse its discretion in denying his special appearance. *See CSR Ltd. v. Link,* 925 S.W.2d 591, 596 (Tex.1996) (indicating that the decision to grant or deny a special appearance lies within the trial court's discretion).

### Point of Error Three

In his next point of error, Reinauer contended that the trial court erred in refusing to hold that the relief Cowan sought was barred by the statute of limitations. We again disagree and overrule the point.

■ At the time the 1979 Decree was signed, the Reinauers' interests in the mili-

---

8. Again, the Decree read that she was entitled to a percentage of "such benefits *if and when paid.*" (Emphasis added).

9. Though the statute was enacted several years after the Reinauers were divorced, the legislature gave it retroactive effect. *Dechon v. Dechon,* 909 S.W.2d 950, 957 (Tex.App.—El Paso 1995, no writ).

tary retirement benefits had yet to mature. Nonetheless, the interests were not mere expectancies but contingent interests in future property, *Cearley v. Cearley,* 544 S.W.2d at 663–66, or choses-in-action. *Day v. Day,* 896 S.W.2d 373, 376 (Tex.App.—Amarillo 1995, no writ) (likening a contingent interest in future property to a chose-in-action). Given this, Cowan was entitled to enforce their division at any time within two years after her ex-husband's interests matured. *Id.;* Tex. Fam.Code Ann. § 3.70(c).

Additionally, that the matured interests would be paid in installments also affected the manner in which limitations would apply. In short, limitations would accrue as to each installment. *Gonzales v. Gonzales,* 728 S.W.2d 446, 448 (Tex.App.—San Antonio 1987, no writ). As each installment was paid, Cowan had to sue to recover her share within two years of the date of payment. So, by postponing suit until October 23, 1993, all she lost was the right to recover her proportion of the monies distributed before October 23, 1991.

### *Point of Error Four*

In his final point of error, Reinauer proposed that the trial court violated § 3.71(a) of the Texas Family Code by substantively amending the division of the property originally declared in the 1979 Decree. We disagree and overrule the point since it was never preserved for review.

One complaining of error in a judgment must first bring that error to the trial court's attention before it can be raised on appeal. Tex.R.App. Proc. 52(a); *Strahan v. Davis,* 872 S.W.2d 828, 836 (Tex.App.—Waco 1994, writ denied); *Metromedia Long Distance, Inc. v. Hughes,* 810 S.W.2d 494, 499 (Tex. App.—San Antonio 1991, writ denied); *see Demler v. Demler,* 836 S.W.2d 696, 700 (Tex. App.—Dallas 1992, no writ) (holding that the appellant waived her objection that the judgment incorrectly omitted the attorney's fees awarded her because it was not first raised in a motion for new trial or to correct, modify

or reform the judgment). Here, the record fails to reveal that Reinauer brought his complaint regarding violation of § 3.71(a) to the trial court's attention. The allegation went unmentioned in his motion for new trial.[10] Nor was it alluded to in any other motion or objection filed by Reinauer. Consequently, it was waived.

Accordingly, we reverse the judgment to the extent that it purports to award Cowan an interest in Reinauer's Veteran Affairs disability benefits and remand the cause to the trial court for recalculation of the sums due Cowan in conformance with this opinion. In all other things, the judgment is affirmed.

### *On Motion for Rehearing*

■ James Reinauer moved for rehearing. Only the first point mentioned in his motion warrants discussion by the court. In it, he argued that he preserved his allegations concerning the trial court's purported modification of the judgment contrary to § 3.71 of the Texas Family Code. If for no other reason, he suggested, the modification occurred when the court had no jurisdiction to do so. Thus, the act was purportedly void and, as such, could be raised for the first time on appeal. We agree. To the extent that the court lacked jurisdiction to do what it did, the error could be raised on appeal without first presenting it to the court below. *Spradley v. Hutchison,* 787 S.W.2d 214, 216 (Tex.App.—Fort Worth 1990, writ denied); *H.E. Butt Grocery Co. v. Bay, Inc.,* 808 S.W.2d 678, 679 (Tex.App.—Corpus Christi 1991, writ denied) (stating that there are no particular preservation or briefing requirements imposed on a party raising jurisdictional challenges).

Next, regarding the substantive claim itself, Reinauer averred that the judgment from which this appeal was taken improperly modified the 1979 decree. That is, the trial court allegedly lacked jurisdiction to declare, approximately sixteen years later, that the interest of his ex-wife, Margaret Cowan, in the retirement benefits be calcu-

---

**10.** Reinauer did generally aver in his new trial motion that the court "erred in dividing the disability pay" and in "signing a judgment which did not conform to the rulings previously made

by the court." Yet, none touched upon the specific ground of improperly modifying a final judgment as required by Rule 52(a) of the Rules of Appellate Procedure.

lated in reference to his "[g]ross retirement pay received monthly," including "cost of living increases." So too did it allegedly err in ordering him to pay her "interest from the date any payment is due at the rate of ten percent ... per annum." Because each supposed change occurred after the court lost plenary power over the 1979 edict, none could be effectuated. We disagree in part and agree in part.

A trial court has the inherent power to issue orders "necessary to carry ... [a prior] judgment into execution in a manner which [is] consistent with the provisions and finality of the judgment." *Schwartz v. Jefferson*, 520 S.W.2d 881, 888 (Tex.1975). So too may it, in matters subject to the Texas Family Code, issue orders "in aid ... or in clarification of ... prior order[s]." TEX. FAM. CODE ANN. § 3.71(a) (Vernon 1993). Yet, neither grant empowers it to substantively alter an allocation of property ordered in a decree over which its plenary jurisdiction expired. *Schwartz v. Jefferson*, 520 S.W.2d at 888; TEX. FAM. CODE ANN. § 3.71(b) (stating that an order issued under § 3.71 which has that effect "is beyond the power of the divorce court to enter and is unenforceable"); *see Valencia v. Valencia*, 792 S.W.2d 565, 566–67 (Tex.App.—El Paso 1990, no writ) (noting that the court cannot, via a clarification order, impose an obligation to pay where no such obligation previously existed).

Here, in dividing the community estate in 1979, the trial court ordered that one-half of the "community interest" in Reinauer's "retirement pay" be paid to Cowan. Of note is the absence of any phraseology limiting the scope of the term "retirement pay." The court did not mention anything about granting her only a fraction of that pay remaining after deductions, if any, were taken. *See Pierce v. Pierce*, 850 S.W.2d 675 (Tex.App.—El Paso 1993, writ denied)

(wherein the spouse's interest in the asset was a "net" interest since the court ordered that various deductions first be taken). Nor did it include language declaring that the "retirement pay" was to be calculated in reference to a specific sum of money accruing on a particular date. Rather, it used the term in an unambiguous way, and because of that, the verbiage must be literally construed. *Barnard v. Barnard*, 863 S.W.2d 770, 772 (Tex.App.—Fort Worth 1993, no writ).[1] In other words, as long as Reinauer receives retirement pay from the military, that is, pay in the form of compensation accruing due to his years of service with the military, Cowan is entitled to her fractional portion of the *entirety*. Moreover, as that pay rises and falls her fractional interest remains the same (though the amount actually received may rise and fall); this is so as long as the rise or fall is attributable to an increase or decrease in the compensation accruing Reinauer due to his years of service. To read the provision differently would be tantamount to ignoring the literal language of the court.[2]

Consequently, by stating, in 1995, that Cowan's interest is to be calculated in reference to the *"[g]ross* retirement pay received monthly" the trial court merely reiterated that which it ordered back in 1979, *i.e.*, she is entitled to her share of the entirety. Similarly, by factoring into the equation "any cost of living increases" affecting retirement pay, the court again did nothing other than assure that Cowan received her share of all the community asset known as retirement pay. In neither case were Reinauer's obligations changed nor the judgment's dictates substantively modified. *See Dechon v. Dechon*, 909 S.W.2d 950, 956–58 (Tex.App.—El Paso 1995, no writ) (holding that the inclusion of the word "gross" in a later order when describing the spouse's interest in retirement bene-

---

1. Incidentally, in construing an unambiguous judgment, we cannot turn to the court's expressions outside the judgment for guidance. *Bullock v. Regular Vet. Ass'n*, 806 S.W.2d 311, 315 (Tex.App.—Austin 1991, no writ). Consequently, Reinauer's effort to have us consider the court's comments in a letter issued to the parties before judgment must be rebuffed.

2. And though an ancient proverb attributes to lawyers the ability to change white to black, we cannot do so. A directive that X is awarded "a one-third ownership interest in an apple pie" does not mean a one-third of the pie remaining after the government or anyone else takes a bite from it.

fits did not constitute an alteration of the judgment).[3] Thus, the court did not exceed its jurisdiction or violate common or statutory law concerning the finality of judgments.

Yet, the same cannot be said of its attempt to award Cowan interest on her share of the retirement until delivered by Reinauer. That particular obligation appeared nowhere in the original decree. Nor did it implicitly arise from some voluntary contractual obligation of Reinauer.[4] In short, it substantively modified his duties imposed by the 1979 decree regarding the payment of retirement benefits. Since the alteration occurred long after its plenary jurisdiction over the decree dissipated, the action exceeded the trial court's jurisdiction.[5]

Accordingly, we grant that part of Reinauer's motion for rehearing which questions that portion of the judgment ordering him to pay Cowan "interest from the date any [retirement] payment is due at the rate of ten percent (10%) per annum until paid." That provision is redacted from the judgment, and the latter is so reformed. As to the other grounds for rehearing, same are overruled.[6]

---

3. We are not unmindful of the Supreme Court's suggestion in *McGehee v. Epley*, 661 S.W.2d 924 (Tex.1983) that a later inclusion of the term "gross" could be a substantive change. Yet, we conclude that the El Paso Court of Appeal in *Dechon v. Dechon*, 909 S.W.2d 950 (Tex.App.—El Paso 1995, no writ) accurately stated why *McGehee* was inapplicable and adopted that reasoning. In short, *McGehee* failed to consider, in its curt and unanalyzed opinion, the changes wrought by the legislature in § 3.71 of the Texas Family Code; so too does it derive a rather nonsensical result when literally applied. *Dechon v. Dechon*, 909 S.W.2d at 956–58.

4. Thus, unlike post-judgment interest, we are unable to even say that it was implicitly a part of the 1979 judgment. *See Jarrin v. Sam White Oldsmobile Co.*, 929 S.W.2d 21, 25 (Tex.App.—

Houston [1st Dist.] 1996, writ denied) (stating that post-judgment interest, being mandated by statute, is recoverable even though unmentioned in a final judgment).

5. This is not to say that the court is prohibited from awarding Cowan pre-judgment interest upon those sums *adjudicated* as accrued but unpaid. That question is not before us.

6. Incidentally, to the extent that Reinauer believed that the trial court erred in failing to condition the award of appellate attorney's fees upon a successful defense of the judgment on appeal, we find the condition implicit in the judgment. *Spiller v. Spiller*, 901 S.W.2d 553, 560 (Tex.App.—San Antonio 1995, writ denied); *Robinwood Bldg. & Dev. Co. v. Pettigrew*, 737 S.W.2d 110, 112 (Tex.App.—Tyler 1987, no writ).