

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-20-00150-CV
_____

ISABEL PIKULIN, APPELLANT

V.

EDWARD RUSTLAW PIKULIN, APPELLEE

On Appeal from the 320th District Court
Potter County, Texas
Trial Court No. 77,320-D; Honorable Pamela C. Sirmon, Presiding

September 10, 2021

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and DOSS, JJ.

Appellant, Isabel Pikulin, appeals from the trial court's *Judgment and Order Granting Relief* entered in favor of Appellee, Edward Rustlaw Pikulin. She challenges the order through four issues. We affirm in part and reverse in part.

## BACKGROUND

Isabel and Edward were married for over twenty years. The couple divorced on March 4, 2011. A *Final Decree of Divorce* was filed that same day. As part of the division of the marital estate, Edward was awarded a fifty-percent portion of Isabel's retirement benefits with Mason & Hanger Pantex and Isabel was awarded a fifty-percent portion of Edward's retirement benefits with ASARCO. Following the divorce, Edward's attorney sent a Qualified Domestic Relations Order ("QDRO")[1] to the trial court for signature and approval. Isabel and her counsel were unaware of the document. The court signed and entered the QDRO nine months after the divorce was final. On April 24, 2012, a plan administrator from Mason & Hanger sent a letter to Isabel, her attorney, and Edward stating that the QDRO had been accepted and "[a]ccordingly, the pension plan payments will be distributed in accordance with the [QDRO]." While Mason & Hanger Pantex initially approved the QDRO, it later withdrew approval. Accordingly, Edward failed to receive his portion of Isabel's retirement benefits from Mason & Hanger Pantex paid prior to November 2019. Instead, Isabel received both the full share of her retirement as well as her fifty-percent share in Edward's retirement.

On November 20, 2017, more than six years after the *Final Decree of Divorce* awarded to Edward the fifty-percent interest in Isabel's retirement benefits, Edward filed his *Petition for Modification of QDRO and Action to Recover Constructive Trust Funds.* He sought to recover his share of Isabel's retirement benefits that had been awarded to him but allegedly retained by Isabel. The matter was tried to the bench, after which the

---

[1] A qualified domestic relations order is a post-divorce enforcement order. *Gainous v. Gainous*, 219 S.W.3d 97, 107 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). Its purpose is to create or recognize an alternate payee's right to receive all or a portion of the benefits payable to a participant under a retirement plan. *Quijano v. Quijano*, 347 S.W.3d 345, 353-54 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

trial court entered its *Judgment and Order Granting Relief,* awarding judgment against Isabel in the amount of $13,325.91, together with interest thereon, costs, and service of suit in the amount of $224.44, $2,500.00 in attorney's fees payable to C. Len Walker, and directing preparation and issuance of a modified QDRO.

### ANALYSIS

### STANDARD OF REVIEW

We review a trial court's property division for an abuse of discretion. *Swaab v. Swaab*, 282 S.W.3d 519, 524 (Tex. App.—Houston [14th Dist.] 2008, pet. dism'd w.o.j.). Likewise, we review the trial court's ruling on a post-divorce motion to enforce or clarify a divorce decree under an abuse of discretion standard. *In re Marriage of McDonald*, 118 S.W.3d 829, 832 (Tex. App.—Texarkana 2003, pet. denied).

### ISSUE ONE—CONSTRUCTIVE TRUSTEE

Via her first issue, Isabel argues the trial court erred in ruling that she was a constructive trustee concerning any retirement distributions in the *Final Decree of Divorce* in that the *Decree* did not order Isabel be a constructive trustee. Edward responds that under the applicable law, an immediate constructive trust was created for any funds delivered to Isabel which properly belonged to him.

"The [trial] court that rendered the decree of divorce . . . retains the power to enforce the property division . . . ." TEX. FAM. CODE ANN. § 9.002 (West 2020); *In re N.T.P.*, 402 S.W.3d 13, 23 (Tex. App.—San Antonio 2012, no pet.). The trial court may render further orders to enforce or clarify the decree so long as it does not amend, modify, alter, or change the substantive division of property. *See* TEX. FAM. CODE ANN. §§ 9.006, .007;

3

*In re N.T.P.*, 402 S.W.3d at 23. A QDRO may also be clarified but may not amend, modify, alter, or change the division of property made or approved in the decree of divorce. *Gow v. Sevener*, No. 05-16-01037-CV, 2017 Tex. App. LEXIS 11196, at *4 (Tex. App.—Dallas Nov. 30, 2017, no pet.) (mem. op.) (citations omitted).

A constructive trust is a creation of equity intended to prevent a wrongdoer from profiting from his or her wrongful acts. *Gray v. Sangrey*, 428 S.W.3d 311, 315 (Tex. App.—Texarkana 2014, pet. denied). It is remedial in nature and functions broadly to redress wrongdoing or unjust enrichment, in keeping with the basic principles of equity and justice. *Id.* A constructive trust may be imposed when one party breaches a confidential relationship. *In re Marriage of Nolder*, 48 S.W.3d 432, 434 (Tex. App.—Texarkana 2001, no pet.). The relationship of a husband and wife is considered a confidential relationship commensurate with formal fiduciary relationships. *In re Marriage of Smith*, 115 S.W.3d 126, 135 (Tex. App.—Texarkana 2003, pet. denied).

It is undisputed that the *Final Decree of Divorce* in this matter awarded one-half of Isabel's retirement with Mason & Hanger Pantex to Edward and one-half of Edward's retirement with ASARCO to Isabel. It is also undisputed that Isabel retired from Mason & Hanger Pantex before the parties divorced and that she began receiving monthly disbursements of approximately $341.69 sometime in 2009. What is in dispute is whether she received only her share of the distribution or whether she received both her share and Edward's, thus obligating her to provide Edward his share.

Isabel argues only that the *Final Decree of Divorce* did not name her as a constructive trustee for any funds awarded to Edward in relation to her retirement with

4

Mason & Hanger Pantex. Thus, she asserts, the December 2011 QDRO, entered without her knowledge or approval, naming her as a constructive trustee of those funds was an improper amendment, modification, alteration, or change to the division of the property.[2]

Edward disagrees, citing to section 9.011(b) of the Texas Family Code which provides, "The subsequent actual receipt by the non-owning party of property awarded to the owner in a decree of divorce or annulment creates a fiduciary obligation in favor of the owner and imposes a constructive trust on the property for the benefit of the owner." TEX. FAM. CODE ANN. § 9.011(b) (West 2020). By the time the parties divorced, Isabel had retired and had begun receiving benefits from her retirement fund. Thus, a fiduciary relationship was created as a matter of law when Isabel received checks for her retirement benefits from Mason & Hanger Pantex that included sums duly payable to Edward. Once she received each check, she held in trust the portion of her retirement that had been awarded to Edward under the *Decree* and subsequent QDROs. Because Isabel did not immediately forward those funds as required, she breached a fiduciary duty. *Simmons v. Simmons*, No. 03-15-00008-CV, 2016 Tex. App. LEXIS 353, at *7-8 (Tex. App.—Austin Jan. 14, 2016, no pet.) (mem. op.).

We do not agree with Isabel's contention that the clause in the QDRO naming her as constructive trustee was an amendment, modification, alteration, or change to the division of the property set forth in the *Final Decree of Divorce.* The *Decree* sets forth in paragraph H-4 that Edward is to receive a fifty-percent portion of Isabel's retirement benefits from Mason & Hanger Pantex, "together with any interest, dividends, gains, or

---

[2] All subsequent QDROs included the constructive trustee clause. At trial, Isabel admitted she was aware of the QDROs that had been entered.

losses on that amount arising since that date and more particularly defined in a Qualified Domestic Relations Order to be signed by the Court." The subsequent QDROs filed in this matter do not change the allocation of benefits award to Edward in any way. The documents simply set forth that "[i]f the Plan pays to [Isabel] any benefits that are assigned to [Edward] pursuant to the terms of this order, [Isabel] is designated a constructive trustee to the extent that [Isabel] has received such benefit payments and shall immediately pay, within three days of receipt by [Isabel], the amounts so received directly to [Edward] at [Edward's] last known address." *Compare Walker v. Walker*, No. 04-98-00537-CV, 2000 Tex. App. LEXIS 2359, at *14 (Tex. App.—San Antonio April 12, 2000, pet. denied) (mem. op.) (finding provision substantively changed the original decree because it could delay receipt of payments to the appellant and decreased the money the appellant was entitled to receive because the order required him to pay 66.3% of the monthly costs of administering the trust account).

Thus, if Isabel did indeed receive and hold funds rightfully belonging to Edward as set forth in the *Final Decree of Divorce* and subsequent QDROs, she was tasked with the duty to forward those funds to Edward in her capacity as a constructive trustee. As such, we cannot find the trial court abused its discretion and accordingly, we overrule Isabel's first issue.

**ISSUE TWO—STATUTE OF LIMITATIONS**

Through her second issue, Isabel contends the trial court erred in not applying the two-year limitations period found in section 9.003(a), (b) in the Family Code and/or the four-year limitations period found in section 16.004(a)(5) of the Texas Civil Practice and Remedies Code[3] which barred Edward's cause of action for recovery of money damages from Isabel.

Section 9.003 of the Texas Family Code provides as follows:

(a) A suit to enforce the division of tangible personal property in existence at the time of the decree of divorce or annulment must be filed before the second anniversary of the date the decree was signed or becomes final after appeal, whichever date is later, or the suit is barred.

(b) A suit to enforce the division of future property not in existence at the time of the original decree must be filed before the second anniversary of the date the right to the property matures or accrues or the decree becomes final, whichever date is later, or the suit is barred.

TEX. FAM. CODE ANN. § 9.003.

At the time of the parties' divorce, Isabel had already retired from Mason & Hanger Pantex and thus, her retirement account was property that was in existence at the time of the property division. It was not a future benefit that continued to accumulate. Rather,

---

[3] Section 16.004 of the Texas Civil Practice and Remedies Code provides as follows:

(a) A person must bring suit on the following actions not later than four years after the day the cause of action accrues:
    (1) specific performance of a contract for the conveyance of real property;
    (2) penalty or damages on the penal clause of a bond to convey real property;
    (3) debt;
    (4) fraud; or
    (5) breach of fiduciary duty.

TEX. CIV. PRAC. & REM. CODE ANN. § 16.004 (West 2002).

the only action needed was the disbursal of the retirement benefits. This court has held that retirement benefits mature on payment of each installment. *In re Marriage of Reinauer*, 946 S.W.2d 853, 860 (Tex. App.—Amarillo 1997, pet. denied). "In short, limitations would accrue as to each installment." *Id.* (citing *Gonzales v. Gonzales*, 728 S.W.2d 446, 448 (Tex. App.—San Antonio 1987, no writ)). Therefore, the property in dispute here (pension payments received by Isabel and not forwarded to Edward) would not mature or accrue until Mason & Hanger Pantex made a disbursement and the limitations would accrue as to each installment. *In re Marriage of Reinauer*, 946 S.W.2d at 860. Because Isabel continued to receive disbursements through the time suit was filed, section 9.003(b) was applicable, and it operated to bar a suit to enforce the QDRO only as to payments accruing more than two years prior to the date suit was filed.

Section 9.003 does not, however, operate to bar a suit for monetary damages arising from a breach of Isabel's fiduciary duty because such a suit is not a "suit to enforce the division of tangible personal property in existence at the time of the decree of divorce," nor is it a "suit to enforce the division of future property not in existence at the time of the original decree." As such, a suit for recovery of monetary damages arising from a breach of Isabel's fiduciary duty to immediately forward payments to Edward would be covered by the general statute of limitations found in section 16.004(a)(5) of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.004(a)(5) (West 2002).

We note also that the record reflects that the trial court did apply the pleaded four-year statute of limitations found in section 16.004. In its findings, the trial court stated, "Isabel raised the statute of limitations as a defense under the Tex. Civ. Practice and

Rem. Code limiting Edwards [sic] recovery to four years prior to filing suit in September 2017." The court then applied that four-year time period in determining the award to Edward. We thus overrule Isabel's second issue.

### ISSUE THREE—MONETARY DAMAGES

In her third issue, Isabel contends the trial court erred in awarding monetary damages to Edward because the evidence was insufficient to support the award.

In a family law case, legal and factual sufficiency of the evidence are not independent grounds for reversal, but they are relevant factors in assessing whether the trial court abused its discretion. *Gow*, 2017 Tex. App. LEXIS 11196, at *4 (citing *Moore v. Moore*, 383 S.W.3d 190, 198 (Tex. App.—Dallas 2012, pet. ref'd)).

To determine whether the trial court abused its discretion because the evidence is legally or factually insufficient,[4] we consider whether the trial court had sufficient evidence on which to exercise its discretion and erred in applying that discretion. *Gow*, 2017 Tex. App. LEXIS 11196, at *4 (citing *Moroch v. Collins*, 174 S.W.3d 849, 857 (Tex. App.—Dallas 2005, pet. denied)). We conduct the applicable sufficiency review when considering the first prong of the test. *Id.* (citation omitted). We then determine whether, based on the elicited evidence, the trial court made a reasonable decision. *Id.* (citation omitted). A trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support the decision. *Id.* (citation omitted).

---

[4] Isabel argues the proper standard of review in this matter is that of factual sufficiency. Edward does not address the standard of review as it relates to Isabel's third appellate issue.

As support for her contention, Isabel argues that Edward failed to produce any evidence from a representative of the Mason & Hanger Pantex Retirement Plan. She points to the April 24, 2012 letter from B&W Pantex Plan Administrator that stated the December 1, 2011 QDRO was accepted and that "[a]ccordingly, the pension plan payments will be distributed in accordance with the Qualified Domestic Relations Order." She argues there was no evidence that Edward's portion that was being held pursuant to the letter was not set aside and awaiting Edward's cooperation to distribute the amounts held. Rather, she asserts, the only evidence presented was that she received from her retirement fund $341.69 on a monthly basis and that she had started receiving those benefits as of February 2009. In other words, Isabel was arguing that there was no evidence that she was receiving the entire benefit, i.e., both her share and Edward's share. Rather, she argues, it could be that she was receiving only her share and the other half was being held by Mason & Hanger Pantex. Isabel further contends the trial court could not have arrived at it monetary damages award to Edward based on the evidence put forth at trial.

Edward disagrees. He points to the following facts adduced during Isabel's testimony at trial: (1) Isabel admitted to receiving her retirement benefits from at least February 2009, (2) Isabel acknowledged she has an account at "State Street" located in Boston, Massachusetts, and recognized exhibit #2 as a statement from her account, (3) Isabel admitted that the payment amount deposited as shown on exhibit #2 was $341.69, (4) Isabel admitted she was aware of the *Final Decree of Divorce* and that she and Edward had each received an equal share of the other's retirement benefits, and (5) Isabel stated that her retirement benefits from Mason & Hanger Pantex and her share of

Edward's retirement benefits from ASARCO are deposited into the account with State Street. Edward then points to these additional facts adduced during his testimony at trial: (1) he recognized the joint benefit application signed on behalf of himself and Isabel selecting the 75% joint annuity option, (2) he recalled completing the worksheet to determine benefits, (3) he recalled that the annuity from Mason & Hanger Pantex would pay $341.69 per month, and (4) he recalled that the benefit application had been sworn to before a notary, Isabel's son. Accordingly, Edward argues that the evidence at trial showed the retirement benefit from Mason & Hanger Pantex was $341.69, received by Isabel on a monthly basis from at least February 2009.[5] Thus, he contends, the trial court properly determined his portion of those funds by dividing the monthly benefit in half, resulting in $170.85, and multiplying that figure by a total of seventy-eight months (the number of months Isabel had received the monthly benefit from four years prior to Edward's suit in September 2017 and the thirty months that passed between the filing date of the petition and the date of the hearing) to arrive at a figure of $13,325.91.[6]

---

[5] The record indicates Isabel retired from Mason & Hanger Pantex in 2000.

[6] In the trial court's *Judgment and Order Granting Relief*, the court found:

An initial QDRO was signed by the trial court for Edward's benefit which was filed on December 1, 2011 and the QDRO included a constructive trust clause which required Isabel to pay Edward his share of the benefits within three days of receipt; the QDRO was ultimately rejected by Pantex and the latter continued paying Isabel the full monthly retirement benefit of three hundred forty-one dollars and sixty-nine cents, $341.69; Isabel failed to forward Edward's portion of retirement proceeds as previously ordered, a continuing Violation and breach of fiduciary duty in her capacity as constructive trustee; Isabel raised the statute of limitations as a defense under the Texas Civil Practice and Remedies Code limiting Edward's recovery to four years prior to filing suit in September of 2017; thirty months have passed between the filing date of the petition and the date of hearing for a total of seventy-eight months; the amount wrongfully retained by Isabel is 78 months x 341.69 divided by one half, or (78 mos. x $341.69) / 2 = $13,325.91.

While we agree with Isabel that the most direct evidence regarding the plan benefits would have come from the testimony of a representative of the benefits plan of Mason & Hanger Pantex, we cannot agree that the evidence was insufficient to support the trial court's order. The trial court had before it some evidence of a substantive and probative character to support its decision. As noted, it is undisputed that the *Final Decree of Divorce* awarded to Edward a 50% interest in Isabel's retirement from Mason & Hanger Pantex. Also undisputed is the fact that Isabel received $341.69 from the plan on a monthly basis at least as early as February 2009. The testimony and documentation show Isabel and Edward chose the 75% Joint & Survivor Option, providing a monthly $341.69 benefit to Isabel. While it did provide $256.27 to Edward in the event of Isabel's death if the parties remained married, that figure does not indicate that the benefit that was divided between Isabel and Edward per the divorce was more or different than the $341.69 figure. There was no evidence, other than a vague possible assertion by Isabel, that the benefit was actually $683.38,[7] such that Isabel was receiving her half and Edward's half of the same amount was being held by the plan. Edward testified he spoke with someone knowledgeable about the plan and that person told him they do not hold benefits in that manner. Accordingly, the trial court did not abuse its discretion in finding that Isabel received the full retirement benefit of $341.69 per month and that half of that amount should have been sent each month to Edward within three days of receipt.[8]

---

[7] Isabel testified that the benefit is "supposed to be six-hundred-something, but they just said, 'You just get half of it. He gets the other half." However, she also testified that the entire time she has received the benefit, even while she was still married to Edward, she received $341.69.

[8] When asked about the instruction in the QDRO requiring Isabel to send money to Edward upon receipt, she said, "I thought automatically he would get my half of the Pantex QDRO. I didn't worry about that."

We also find the trial court did not err in determining the proper time period was seventy-eight months. The court calculated that time period based on the thirty months that had passed between the filing date of the petition and the date of the hearing and the application of the four-year statute of limitations asserted by Isabel. The court combined the two time periods to arrive at seventy-eight months. Thus, the court reached this time period based on some evidence of a substantive and probative character. We find the trial court did not abuse its discretion in reaching its ruling in this matter and resolve Isabel's third issue against her.

### ISSUE FOUR—ATTORNEY'S FEES AND COSTS

Lastly, Isabel asserts the trial court erred in awarding attorney's fees and costs of court to Edward because no evidence was introduced to support such an award. We agree.

An award of attorney's fees must be supported by legally and factually sufficient evidence. *City of Laredo v. Montano*, 415 S.W.3d 1, 3 (Tex. App.—San Antonio 2012, no pet.). When reviewing a legal sufficiency challenge, we review the evidence in the light most favorable to the finding and determine whether the finding is supported by more than a mere scintilla of evidence. *City of Keller v. Wilson*, 168 S.W.3d 802, 813, 822 (Tex. 2005). When reviewing a factual sufficiency challenge, we consider and weigh all the evidence, and set aside the award only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

"When a claimant wishes to obtain attorney's fees from the opposing party, the claimant must prove that the requested fees are both reasonable and necessary." *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 489 (Tex. 2019) (citation omitted). Both the reasonableness and the necessity of a fee are questions of fact. *Id.*

The lodestar method of fee calculation applies "to any situation in which an objective calculation of reasonable hours worked times a reasonable rate can be employed." *Id.* at 498. With the lodestar method, "the fact finder's starting point for calculating an attorney's fee award is determining the reasonable hours worked multiplied by a reasonable hourly rate, and the fee claimant bears the burden of providing sufficient evidence on both counts." *Id.* Sufficient evidence of a reasonable and necessary fee "includes, at a minimum, evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services." *Id.* Contemporaneous billing records are not strictly required to prove the reasonableness and necessity of requested fees but are *strongly* encouraged. *Id.* at 502. (emphasis in original).

Here, the only evidence regarding attorney's fees was provided by Perry Peek, Isabel's attorney. He testified as follows:

My name is Perry Peek. I'm a lawyer that is licensed by the State Bar of Texas. I've been practicing law since 1984, so for some 37 years. I am well-familiar with this type of case. My client has paid me $2,500 to come to this hearing today. At this hearing there was a misjoinder of parties. There was no discovery done. There are no numbers presented to the Court that the Court could even come up with what is owed, and this has been a waste of my client's attorney fee money. So we'd ask the Court to take that into consideration and order that Mr. Pikulin pay my client the $2,500 in attorney's fees she's had to pay.

Edward's counsel did not testify and he did not offer any evidence supporting an award of attorney's fees.

On appeal, Edward argues that Peek's testimony could be taken as testimony that a reasonable amount of fees for a one-half day hearing was $2,500, the amount Isabel paid Peek. He asserts the trial court was permitted to consider that amount, it was not in opposition, and that the evidence was substantial, not just a scintilla. Thus, he argues, because he was the prevailing party, he was entitled to reasonable attorney's fees and costs, both of which the trial court properly awarded. TEX. FAM. CODE ANN. § 9.014 (West 2020).[9]

Edward's attorney failed to present any testimony regarding attorney's fees. On appeal, he relies on the testimony of Peek, Isabel's attorney. But, Peek only testified to his experience, his familiarity with this type of case, and the fact that Isabel had paid to him $2,500 in fees. This is insufficient evidence to support an award of attorney's fees in favor of Edward. As such, we sustain Isabel's fourth issue.

---

[9] This provision recites as follows: "The court may award reasonable attorney's fees in a proceeding under this subchapter. The court may order the attorney's fees to be paid directly to the attorney, who may enforce the order for fees in the attorney's own name by any means available for the enforcement of a judgment for debt." TEX. FAM. CODE ANN. § 9.014.

15

**CONCLUSION**

Having resolved Isabel's first three issues against her, we affirm the trial court's judgment in part. However, because the record does not provide the requisite details to support a fee award, we reverse the trial court's judgment as to the attorney's fee award and render judgment that Edward take nothing on his request for the recovery of attorney's fees.

> Patrick A. Pirtle
> Justice

Quinn, C.J., concurring in the result.